[No. 29832-9-III.    Division Three.    April 9, 2013.]

THE STATE OF WASHINGTON, *Respondent*, v. DARRELL F. SMITH, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*D. Angus Lee, Prosecuting Attorney,* and *Edward A. Owens* and *Ryan J. Ellersick, Deputies,* for respondent.

¶1 SIDDOWAY, A.C.J. — Darrell Smith was convicted of multiple crimes arising out of his alleged 12-hour unlawful imprisonment of Eric Chadwick. He was also convicted for possession of methamphetamine found in a search following his arrest. While he makes numerous assignments of error, we find one dispositive: the atypical wording of the elements instructions given at trial could have allowed jurors to convict him even if they entertained reasonable doubt as to his guilt.

¶2 We reject Smith's single evidence sufficiency challenge (to his conviction for possession of methamphetamine), reverse his convictions on the basis of the instructional error, and remand for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

¶3 Darrell Smith was convicted of first degree robbery, unlawful imprisonment, second degree assault, misdemeanor harassment, and second degree theft. All arose from a scheme that Smith hatched with a drifter, Desert Sand Donini, who was then living at the same motel in Moses

Lake as was Smith. Donini had become acquainted with Eric Chadwick, who was in Moses Lake to work a temporary construction job and had helped Donini out when she ran out of money in late February 2010. Smith and Donini realized that Chadwick, who had a good job and was then working 60 hours a week, probably had a fair amount of money.

¶4 The many twists and turns of what became Smith's and Donini's alleged 12-hour imprisonment of Chadwick need not be recounted, given the basis for our decision. It suffices to say that Smith demanded that Chadwick withdraw funds from Chadwick's bank accounts, buy assets that Smith could traffic, and—when Chadwick's credit/debit card was eventually frozen—forced him to drive Smith to locations where Smith could steal merchandise and then sell it. Eventually, Chadwick claims to have seen his opportunity to escape and did, promptly calling police.

¶5 Smith and Donini were found and arrested. Smith agreed to speak with Moses Lake police officers, and his statement to police was recorded. A search warrant was obtained for his motel room, resulting in discovery of a CD (compact disc) with white residue on its surface that tested positive for methamphetamine.

¶6 Donini agreed to testify for the State at trial, where she supported Chadwick's version of his imprisonment. Smith's defense at trial was that Chadwick had been a willing participant in the 12-hour crime spree and called police only when he became concerned about being charged.

¶7 At trial, the court-prepared jury instructions differed in several respects from the Washington pattern jury instructions. The court's introduction to instructions given at the conclusion of trial omitted some of the cautions and directions included in 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 1.02 (3d ed. 2008) (WPIC) (Conclusion of Trial—Introductory Instruction).

¶8 The elements instructions were generally based on WPIC 4.21 (Elements of the Crime) but had been modified

with respect to directions given the jury depending on how it weighed the evidence. After stating the elements of a given crime, WPIC 4.21 provides:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *it will be your duty to* return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt . . . , then *it will be your duty to* return a verdict of not guilty.

(Emphasis added.)

¶9 The court's elements instructions to the jury generally read, instead:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *you should* return a verdict of guilty . . . .
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt . . . , then *you should* return a verdict of not guilty.

Clerk's Papers (CP) at 60 (Instruction 12, second degree assault), 62 (Instruction 14, possession of a controlled substance), 66 (Instruction 18, second degree theft), 71 (Instruction 23, unlawful imprisonment), 74 (Instruction 26, misdemeanor harassment), 52-53 (Instruction 5, robbery[1]). Smith did not object to any of these instructions.

¶10 The jury began its deliberations late in the afternoon. At around 11 a.m. the next morning, the jury asked to watch Smith's recorded statement again. The trial judge initially declined the request. After further deliberations, the jury sent out the following statement:

> We have come to a stand-still and don't believe we can get any closer to a unanimous decision without seeing the parts of the interview video between Officer Loyd and Darrell Smith that we viewed during trial.

---

[1] Instruction 5, dealing with robbery, was worded slightly differently but still directed the jury that "if, after weighing the evidence, you have a reasonable doubt . . . , then you should return a verdict of not guilty."

CP at 80. The judge then allowed the video to be replayed for the jury in open court, over Smith's objection. In replaying the video, portions that had not earlier been admitted into evidence were inadvertently presented. The jury thereafter reached its verdict.

¶11 Smith was convicted of first degree robbery, unlawful imprisonment, second degree assault, possession of methamphetamine, misdemeanor harassment, and second degree theft. A motion for a new trial on the burglary charge was granted, but the court denied a motion for a new trial based on the inadvertent airing of video footage that had not been admitted in evidence, the court finding no prejudice.

¶12 Smith was sentenced to 17 years in prison. He appeals.

## ANALYSIS

¶13 The trial court's introductory instruction to the jury at the conclusion of the evidence did not include 12 cautions or directions usually included; among those omitted were that the jurors accept the law "regardless of what [they] personally believe the law is" and "apply the law from [the court's] instructions to the facts that [they] decide have been proved, and in this way decide the case." *Compare* WPIC 1.02, *with* CP at 47-49. More significantly, the elements instructions directed the jurors that "if, after weighing all the evidence, you have a reasonable doubt . . . , then *you should* return a verdict of not guilty." Smith argues that modifications to the pattern instructions created a "free for all," including leaving the jury with no constitutional guidance.

¶14 Generally, a party who fails to object to jury instructions in the trial court waives a claim of error on appeal. RAP 2.5(a); *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010). Our general refusal to entertain issues that were not raised in the trial court has a specific applicability to most jury instructions in criminal cases in light of CrR 6.15(c), requiring that timely and well stated

objections be made to instructions given or refused " 'in order that the trial court may have the opportunity to correct any error.' " *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988) (quoting *City of Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). Manifest errors affecting a constitutional right may be raised for the first time on appeal, however. *Id.* at 685.

¶15 Smith argues that the trial court's instructions relieved the State of its burden to prove all of the required elements beyond a reasonable doubt, thereby violating due process and constituting manifest constitutional error. We agree that his challenge to the elements instructions presents an issue of manifest error affecting a constitutional right. *See State v. Dow*, 162 Wn. App. 324, 330, 253 P.3d 476 (2011) (citing *State v. O'Hara*, 167 Wn.2d 91, 100-01, 217 P.3d 756 (2009)); *State v. Mills*, 154 Wn.2d 1, 6, 109 P.3d 415 (2005) (observing that the elements instruction "carries with it a special weight because the jury treats the instruction as a 'yardstick' by which to measure a defendant's guilt or innocence").

¶16 With respect to the claimed omissions from the trial court's introduction to its concluding instructions, though, we disagree. The requirements of due process usually are met when the jury is informed of all the elements of an offense and instructed that unless each element is established beyond a reasonable doubt the defendant must be acquitted. *Scott*, 110 Wn.2d at 690. The directions and cautions included in WPIC 1.02 can prove important on appeal if a defendant contends that jurors reached their verdict for an improper reason; in such cases, appellate courts regularly rely on a trial court's introductory instructions and the presumption that juries follow those instructions. *See, e.g., Diaz v. State*, 175 Wn.2d 457, 474, 285 P.3d 873 (2012). Smith has not demonstrated that the trial court's omissions of some of the cautions and directions included in WPIC 1.02 amounted to constitutional error, however, let alone manifest constitutional error.

¶17 We therefore review only the elements instructions. Review is de novo, in the context of the instructions as a whole. *Gregoire v. City of Oak Harbor*, 170 Wn.2d 628, 635, 244 P.3d 924 (2010).

¶18 The specific language of the instructions is left to the discretion of the trial court. *State v. Coe*, 101 Wn.2d 772, 787, 684 P.2d 668 (1984). The instructions as a whole must, however, correctly state the law. *Boeing Co. v. Key*, 101 Wn. App. 629, 633, 5 P.3d 16 (2000). While pattern jury instructions are intended to be accurate, concise, unbiased statements of the law, they are not the law and are not mandatory. *In re Pers. Restraint of Domingo*, 155 Wn.2d 356, 369, 119 P.3d 816 (2005).

¶19 "What the factfinder must determine to return a verdict of *guilty* is prescribed by the Due Process Clause." *Sullivan v. Louisiana*, 508 U.S. 275, 277, 113 S. Ct. 2078, 124 L. Ed. 2d 182 (1993) (emphasis added); U.S. Const. amend. XIV, § 1. The prosecution bears the burden of proving all elements of the offense charged and must persuade the fact finder beyond a reasonable doubt of the facts necessary to establish each of those elements. *Id.* at 277-78 (citing, *e.g.*, *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). The beyond-a-reasonable-doubt requirement applies in state as well as federal proceedings. *Id.* at 278.

¶20 A corollary of the due process requirement that a jury find proof beyond a reasonable doubt in order to return a verdict of guilty is that it must return a verdict of not guilty if the State does not carry its burden. Jury instructions must convey this. It is reversible error to instruct the jury in a manner relieving the State of its burden. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

¶21 Smith argues that the substitution of the word "should" reduced the State's burden by connoting what is proper rather than what is required. By directing the jury that it "should" return a verdict of not guilty if the State failed to meet its burden of proof, Smith argues that the jury was left with the impression that it ought to acquit if

possessed of reasonable doubt but that it was not mandatory. No Washington decisions address the substitution of "should" for "duty" in an elements instruction, but Smith cites the observation of a Massachusetts appellate court that the "use of the permissive 'should' rather than the mandatory 'must' " is a serious misstep that "goes to the heart of the [matter]: where reasonable doubt remains, acquittal is mandatory." *Commonwealth v. Caramanica*, 49 Mass. App. Ct. 376, 729 N.E.2d 656, 659 (2000). Even so, the Massachusetts court held that "[w]ere this the only flaw . . . , reversal might not be required." *Id.*

¶22 *Leavitt v. Arave*, 383 F.3d 809 (9th Cir. 2004) supports Smith's position more strongly. In that case, the Ninth Circuit reviewed a district court's grant of habeas relief based, among other claimed error, on the court's instruction 10, which explained that before the jury could convict, it " '*should* require the Prosecution to prove every material allegation contained in the Information beyond a reasonable doubt.' " *Id.* at 821 n.5 (emphasis added). While the Ninth Circuit reversed the district court's grant of habeas relief, it explained that any error in instruction 10 was immediately cured by a following statement that if " 'you entertain a reasonable doubt of the truth of any one of these material allegations, then it is *your duty* to give the Defendant the benefit of such doubt and acquit him,' " and by summing up with the unequivocal statement, " 'There *must* be proof beyond a reasonable doubt.' " *Id.* at 822. In a footnote, the court explained why use of the term "should" may have misstated the jury's obligation, which was

> by no means clear, as common definitions of "should," "shall" and "must" include both an obligatory and an exhortatory connotation. *See, e.g.*, *Webster's Third New International Dictionary* (unabridged 1986).

*Id.* at 822 n.6; *see also Caudill v. Judicial Ethics Comm.*, 986 S.W.2d 435, 438 (Ky. 1998) (concluding, in a different context, that "[s]hould, while definitely strongly encouraging a particular course of action, is permissive. Shall re-

quires a particular course of action and[,] accordingly, is mandatory"); *La. Seafood Mgmt. Council v. La. Wildlife & Fisheries Comm'n*, 97-1367 (La. 5/19/98); 715 So. 2d 387, 394 ("The modern rule rejects [the] 'arcane' meaning [of 'should' as 'was obliged to[ ]'] and instead defines 'should' as 'the weaker companion to the obligatory "ought." ' " (quoting WEBSTER'S NEW COLLEGIATE DICTIONARY 1065 (1979); *State v. Thomas*, 528 So. 2d 1274, 1275 (Fla. Dist. Ct. App. 1988))). *Louisiana Seafood* also relies on Bryan Garner's *A Dictionary of Modern Legal Usage*, the most recent edition of which includes the following entry addressing "ought" and "should":

> *Ought* should be reserved for expressions of necessity, duty, or obligation; *should*, the slightly weaker word, expresses mere appropriateness, suitability, or fittingness.

BRYAN A. GARNER, GARNER'S DICTIONARY OF LEGAL USAGE 644 (3d ed. 2011). *But cf. Torrence v. State*, 574 So. 2d 1188, 1189 (Fla. Dist. Ct. App. 1991) (upholding the use of "should" in instructing a jury whether to acquit).

¶23 We suspect that in this case the jury more likely than not understood the court's use of "should" in the elements instruction as mandatory. But we cannot be sure that it did. One of our panel queried the lawyers during oral argument with "you *should* eat your vegetables but you don't *have to* eat your vegetables," and "you *should* get more exercise doesn't mean you *shall* get more exercise." Even the State did not disagree.

¶24 Erroneously instructing the jury that it may acquit if in reasonable doubt is structural error. *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149, 126 S. Ct. 2557, 165 L. Ed. 2d 409 (2006) (denial of the right to trial by jury by giving of a defective reasonable doubt instruction is structural error, citing *Sullivan*). Structural error is not subject to harmless error analysis; prejudice is necessarily presumed. *State v. Strode*, 167 Wn.2d 222, 231, 217 P.3d 310 (2009). " '[T]he difficulty of assessing the effect of the

error' " is one criterion for identifying harmless error. *State v. Wise*, 176 Wn.2d 1, 14 n.7, 288 P.3d 1113 (2012) (quoting *Gonzalez-Lopez*, 548 U.S. at 149 n.4). It is illustrated here. At one point, this jury was deadlocked. We do not know why and we do not know how the deadlock was resolved. Perhaps jurors concluded from the court's instructions that while jurors with lingering doubts *should* return a verdict of not guilty, they did not have to.

¶25 "The jury instructions, read as a whole, 'must make the relevant legal standard manifestly apparent to the average juror.' " *State v. Kyllo*, 166 Wn.2d 856, 864, 215 P.3d 177 (2009) (quoting *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997)). The elements instructions did not do so here.

¶26 We reverse Smith's convictions and remand for a new trial.

¶27 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

SWEENEY and BROWN, JJ., concur.

Reconsideration denied April 30, 2013.

Reveiw denied at 178 Wn.2d 1008 (2013).