# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 71622-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| AIGALELEI PUA, | ) | |
| | ) | |
| Appellant. | ) | FILED: July 27, 2015 |
| | ) | |

APPELWICK, J. — Pua appeals his conviction of second degree assault and third degree theft. He argues that the trial court violated his right to a fair and impartial jury by suggesting that the jury must reach a unanimous decision. He asserts that the trial court abused its discretion in admitting unduly prejudicial ER 404(b) evidence. We affirm.

## FACTS

On July 4, 2013, Joshua Phair was assaulted by a group of people, including Aigaleilei Pua.[1] Pua hit Phair in the arms, ribs, and legs with a baseball bat. Pua and the others took Phair's cell phone, cash, heroin, pills, wallet, and car keys. After the assault, Pua told Phair that it would be worse for him if he went to the police.

---

[1] The other assailants are not parties to this appeal.

Phair reported the incident the next day. Pua was charged with robbery in the first degree, assault in the second degree, and intimidating a witness.

The State's theory was that Pua assaulted Phair in retaliation for an incident in which Phair left Pua stranded on the side of the road. In that incident, Pua was giving Phair a ride when the car ran out of gas. Pua seemed agitated, so Phair asked him why he was so jumpy. In response, Pua lifted a rag that covered the car's ignition and indicated that the car was stolen. Pua gave Phair five dollars and told him to come back with gas. Phair took the money but did not return. The State argued that this gave Pua a motive to attack Phair.

Pua moved in limine to preclude Phair from testifying that he believed the car was stolen. Pua asserted that it was prior bad act evidence that should be excluded as unduly prejudicial under ER 404(b). The State responded that the testimony was not evidence of a prior bad act, because "we don't know if the car was actually stolen or not." Instead, the State offered the testimony to explain Phair's reason for not returning, which went to Phair's credibility. The trial court concluded that the evidence did not fall under ER 404(b), reasoning that "what we expect Mr. Phair will testify to would be the case regardless of whether the car was stolen." It denied Pua's motion. Phair testified about the incident at trial.[2]

___

[2] In particular, Phair stated that Pua "lifted up a rag that was over the, uh, ignition of the car and that's when, you know, he pointed out that it was a stolen vehicle." Pua did not renew his objection to this testimony. Phair also testified that he had "known [Pua] to drive stolen cars." The court sustained Pua's ER 404(b) objection to this statement. It denied his subsequent motion to strike. On appeal, Pua acknowledges the denial of the motion to strike, but does not assign error to it.

The jury received six verdict forms as to the charges against Pua. In verdict forms A1 and A2, the jury found Pua not guilty of robbery in the first or second degree. In verdict form A3, it found him guilty of the lesser crime of theft in the third degree. In verdict form C, it found Pua not guilty of intimidating a witness.

As to Pua's assault charges, in verdict form B1, the jury found Pua guilty of assault in the second degree. However, in verdict form B2, the jury found Pua not guilty of the lesser crime of assault in the third degree. As a result, the jury's verdict was ambiguous.

The trial court discussed this issue with counsel, and all agreed to dismiss the jury while a solution was reached. The court advised the jurors,

> We have discovered a bit of a glitch. And, we are all going to spend the weekend working on how to resolve it. Please plan to come back at 1:30 on Monday unless you hear otherwise, and you may hear otherwise. And in the meantime, please continue to follow my orders with regard to not discussing the case with anyone else. Certainly [do] not do any research and everything else that I ordered you.

On the following Monday, the prosecutor presented a proposed jury interrogatory. The interrogatory stated,

> It is not the Court's intention to comment on your verdicts. There appears to be some ambiguity in the verdict that requires clarification. Please answer the following:
>
> Do you find the defendant, AIGALEILEI PUA guilty of Assault in the Second Degree? YES or NO (circle one).
>
> IF YOUR ANSWER IS YES, STOP HERE. DO NOT COMPLETE THE REMAINDER OF THIS INTERROGATORY. ONLY IF YOUR ANSWER IS NO, THEN PLEASE ANSWER THE FOLLOWING:

Do you find the defendant, AIGALEILEI PUA guilty of the lesser offense of Assault in the Fourth[3] Degree?  YES or NO (circle one).

Pua did not object to the interrogatory.[4]

The court presented the interrogatory to the jury.  The court also verbally advised the jury that "it is not my intention to comment on your verdicts in any way, but there appears to be some ambiguity in the verdict that requires clarification.  I'm going to send you back into the jury room and provide to you one interrogatory for you to consider and answer, and then we'll move forward."  It also provided the jury with the original jury instructions and original verdict forms to refer to while completing the interrogatory.

In response to the question, "Do you find the defendant, AIGALEILEI PUA guilty of Assault in the Second Degree," the jury circled "YES."  The jury provided no response to the question, "Do you find the defendant, AIGALEILEI PUA guilty of the lesser offense of Assault in the Fourth Degree."

Pua appeals.

## DISCUSSION

### I.   Right to Fair and Impartial Jury

Pua argues that the trial court violated his right to a fair and impartial jury by coercing the jury verdict.  He asserts that the court's instructions suggested that the jury must reach a unanimous verdict, because the interrogatory permitted the jury to answer only "YES" or "NO" as to Pua's guilt.  He further argues that, by directing the jury to

___

[3] The third degree assault charge in verdict form B2 was a clerical error.  Pua was in fact charged with the lesser crime of assault in the fourth degree.

[4] Pua's counsel stated that he was "largely in favor of" the interrogatory, but suggested a clarification regarding the errant third degree assault charge in verdict form B2.  The court declined, stating that a clarification "makes it potentially more confusing."

complete the interrogatory, the court suggested dissatisfaction with the initial verdict and implied that the jury would be held until its verdict was "somehow repaired."

The State asserts that Pua waived this challenge by failing to raise it below.[5] Generally, a party who fails to object to jury instructions at trial waives a claim of error on appeal. RAP 2.5(a); State v. Smith, 174 Wn. App. 359, 364, 298 P.3d 785, review denied, 178 Wn.2d 1008, 308 P.3d 643 (2013). An exception exists for manifest errors affecting a constitutional right. RAP 2.5(a)(3). Under this exception, an appellant must identify an error of truly constitutional dimension and show that it actually affected the appellant's rights at trial. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

Due process demands that a judge not place coercive pressure upon the deliberations of a criminal jury. State v. Boogaard, 90 Wn.2d 733, 736-37, 585 P.2d 789 (1978). Accordingly, a claim of judicial coercion affecting a jury verdict is an issue of constitutional dimension that we will review for the first time on appeal.[6] State v. Ford, 171 Wn.2d 185, 188, 250 P.3d 97 (2011). To prevail on such a claim, a defendant must show that there is a reasonably substantial possibility that the trial court improperly influenced the verdict. State v. Watkins, 99 Wn.2d 166, 177-78, 660 P.2d 1117 (1983). "This requires an affirmative showing and may not be based on mere speculation." Ford,

---

[5] The State also asserts that any error was invited. The invited error doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. State v. Pam, 101 Wn.2d 507, 511, 680 P.2d 762 (1984), overruled on other grounds by State v. Olson, 126 Wn.2d 315, 593 P.2d 629 (1995). But, Pua did not propose the interrogatory, and "failing to except to an instruction does not constitute invited error." State v. Corn, 95 Wn. App. 41, 56, 975 P.2d 520 (1999).

[6] Pua also asserts that the trial court's instructions violated CrR 6.15(f)(2). Because this claim implicates a court rule—not a constitutional right—we do not address it further.

171 Wn.2d at 189. We consider the totality of circumstances when reviewing claims of judicial coercion affecting a jury verdict. Id.

A trial court invades the right to a jury trial by giving "an instruction which suggests that a juror who disagrees with the majority should abandon his conscientiously held opinion for the sake of reaching a verdict." Boogaard, 90 Wn.2d at 736. In Boogaard, the jury's deliberations had gone late into the evening. Id. at 735. The court sent the bailiff to inquire how the jury stood numerically—not with respect to guilt or innocence— and the bailiff reported that the vote was 10 to 2. Id. The court then called the jury to the courtroom to ascertain its status in reaching a verdict. Id. at 735. The court asked the foreman what the history of the vote had been and whether he thought the jury could reach a verdict in half an hour. Id. When the foreman gave an affirmative reply, the court posed the same question to each juror individually. Id. All but one answered in the affirmative. Id. The court instructed the jury to continue its deliberations for half an hour. Id. Thirty minutes later, the jury sent word it had reached a verdict of guilty. Id.

The Supreme Court reversed the conviction, finding that the court's questioning "tended to and most probably did influence the minority jurors to vote with the majority." Id. at 740. It reasoned,

> The questioning of individual jurors, with respect to each juror's opinion regarding the jury's ability to reach a verdict in a prescribed length of time, after the court was apprised of the history of the vote in the presence of the jurors, unavoidably tended to suggest to minority jurors that they should "give in" for the sake of that goal which the judge obviously deemed desirable—namely, a verdict within a half hour.

Id. at 736. The court further reasoned that the fact that two jurors changed their vote after the court's instruction "justifies an inference that these changes of opinion were based not upon a change of view brought about by the persuasion of fellow jurors, but upon a response to what was thought to be the judge's wishes." Id. at 739-40.

Conversely, in Watkins, the Supreme Court found that the appellant failed to show improper coercion where the trial court provided supplemental instructions to a deadlocked jury. 99 Wn.2d at 170-71, 178. Watkins was charged with first degree assault for firing a gun into an elevator with a hotel employee inside. Id. at 168. The jury was also instructed on the lesser crime of second degree assault. Id. at 170. The corresponding verdict form B, stated, "'We, the jury, find [Watkins] not guilty of the crime of Assault in the first degree as charged and find [Watkins] _____ of the crime of Assault in the second degree.'" Id. at 170. During deliberation, the jury sent the court a question regarding the location of bullet holes in the elevator. Id. at 170, 178. A few hours later, the jury indicated that it was deadlocked and "'not even talking.'" Id. at 170. The court then presented to the jury a supplemental instruction that explained, "In this process it is not necessary that you agree on assault in the First Degree before considering assault in the Second Degree." Id. at 171. Ten minutes later, the jury found Watkins guilty of second degree assault. Id.

On appeal, Watkins argued that the supplemental instruction suggested that a verdict of second degree assault was reasonable and offered the jury a way to be done with deliberations: by reaching agreement on that charge. Id. at 177. The Washington Supreme Court disagreed, finding Watkins' arguments "too remote to establish improper

coercion." Id. at 178. In reaching this result, the court pointed to the jury's question to the trial court:

> The judge might well have been alerted to the need for clarification of the verdict form by the jury's question to the court at 3:05 p.m. This question might well have suggested to the judge that the jury was at that time considering the degree of assault. According to the jury's instruction, the principal fact which distinguished first degree assault from second degree assault was defendant's intent to kill the victim. The location of the bullet holes in the elevator could certainly be considered relevant to the intent of defendant in firing into the elevator. When the jury later declared itself deadlocked, the judge might quite reasonably have concluded that the deadlock was due to disagreement as to the degree of assault. Verdict form B is clearly susceptible to the interpretation that the jury must agree on a verdict of not guilty of first degree assault before considering second degree assault. The supplemental instruction merely informs the jurors that this was not the intended meaning of the verdict form.

Id. The court concluded that nothing about the instruction or its surrounding circumstances "establish[ed] a reasonable possibility that jurors were persuaded by it to abandon conscientiously held opinions in favor of [Watkins]." Id.

In Ford, the Supreme Court likewise found that the trial court did not coerce the verdict. 171 Wn.2d at 186. Ford was charged with two counts of child rape. Id. When the jury returned with its verdict, the presiding juror informed the court that it had reached a unanimous decision. Id. at 186-87. However, only one of the verdict forms was filled in, finding Ford guilty of the second count. Id. at 187. The court sent the jury back to the jury room, verbally instructing it that "[v]erdict form No. 1 is completely blank. It must be filled in." Id. The accompanying written instruction told the jury to "'fill in the blank provided in each verdict form the words "not guilty" or the word "guilty" according to the decision you reach.'" Id. at 202 (Stephens, J., dissenting). The jury was also provided with an instruction stating that "'you should not change your honest belief as to the weight

or effect of the evidence solely because of the opinions of your fellow jurors, or for the mere purpose of returning a verdict.'" Id. at 192. A few minutes later, the jury returned with a unanimous verdict of guilty as to count one. Id. at 187.

The Supreme Court rejected Ford's assertion that the court's verbal instruction constituted improper coercion. Id. at 193. The plurality opinion, which garnered four votes, based this conclusion primarily on the reasoning that the jury had already reached its verdict when the court issued the instruction. Id. at 189. In addition, the opinion addressed the circumstances surrounding the instruction, including the short amount of time spent filling out the verdict form and the proper written instructions that accompanied the court's verbal instruction. Id. at 191-92. The majority of the justices found that Ford did not meet his burden to establish improper judicial influence on the verdict.[7] Id. at 193 (Madsen, J., concurring).

The dissent argued that the court's verbal instruction improperly suggested the need for unanimity by "effectively requir[ing] the jury to come to an agreement that Mr. Ford was guilty or not guilty." 171 Wn.2d at 202, 203 (Stephens, J., dissenting). It concluded,

> Simply put, under the written jury instructions and settled law, the jury had three options in terms of the decision it could reach: agree guilty, agree not guilty, or leave the form blank. But, after the court's comments, the jury had only two options to consider: agree guilty or agree not guilty. By removing the third available option from the jury—the option to leave the form blank—the court improperly interfered with the jury's deliberative process.

---

[7] The concurring opinion, which had two votes, disagreed that the case could be resolved "on the ground that the jury was finished deliberating." Ford, 171 Wn.2d at 193 (Madsen, J., concurring). However, it "agree[d] with the lead opinion that Mr. Ford has not met his burden to establish improper judicial influence on the jury in reaching its verdict." Id.

Id. at 202.

Pua relies on this excerpt to argue that the interrogatory's phrasing likewise prevented the jury from choosing to leave the interrogatory blank. But, the majority of the justices in Ford found that the court's instruction did not constitute improper coercion. See id. at 193 (Madsen, J., concurring). The instruction in that case—to fill in a blank verdict form—is similar to the instruction here—to fill out an interrogatory regarding Pua's guilt. Id. at 187. In fact, the court's instruction here was less forceful than in Ford.

Like the supplemental instruction in Watkins, the interrogatory was intended to help the jury understand the initial verdict forms. See 99 Wn.2d at 178. The verdict forms asked the jury to decide if Pua was guilty of second degree assault and separately asked it to decide if Pua was guilty of fourth degree assault. The jury answered that Pua was guilty of second degree assault, but found him not guilty of the lesser included offense. The interrogatory clarified that a guilty verdict as to the higher degree negated the need to make a finding of guilt as to the lesser degree. The jury then answered that Pua was guilty of second degree assault and provided no response as to the lesser included offense. And, like in Ford, the jury declared its unanimity prior to the court's instruction and remained unanimous afterward. 171 Wn.2d at 187. Unlike Boogaard, no jurors changed their votes after the court's instruction. 90 Wn.2d at 739-40. Here, the court merely sought clarification of a verdict already delivered. Accordingly, there is even less chance here that the jury felt compelled to reach a unanimous decision.

Moreover, as in Ford, the jury was provided with written instructions that expressly stated they need not unanimously agree. Id. at 192. Along with the interrogatory, the court provided the jury the original instructions and verdict forms. The instructions

10

specifically advised the jury, "If you cannot agree on a verdict, do not fill in the blank provided in [the] Verdict Form." This instruction was repeated for each offense charged. The instructions also advised the jurors that they should not "change your mind just for the purpose of reaching a verdict." We presume that juries follow the instructions provided. State v. Ervin, 158 Wn.2d 746, 756, 147 P.3d 567 (2006). In light of these instructions, as well as the jury's consistent unanimous verdict before and after the court's instruction, Pua does not show a reasonably substantial possibility that the phrasing of the interrogatory influenced the jury's verdict.

Pua also asserts that, by giving the jury the interrogatory, the court signaled that it was dissatisfied with the initial verdict. Both the court's verbal instruction and the interrogatory told the jury that there was "some ambiguity in the verdict that requires clarification" and that it was "not [the court's] intention to comment on your verdicts in any way." This is a far cry from Boogaard, where the court instructed the jury to deliberate for 30 minutes, thereby suggesting a desirable outcome—"namely, a verdict within a half hour." 90 Wn.2d at 735-36. Furthermore, even if the court here had communicated some displeasure, Pua cannot show that it had any influence, as the jury's answer to the interrogatory was consistent with its initial verdict: guilty of second degree assault.

Pua further argues that, by telling the jury to complete the interrogatory before they could "move forward," the court implied that the jury would be held until it fixed its verdict. The court simply informed the jury that there was a necessary step to be taken before the procedures could continue. Pua provides no authority for the assertion that a procedural instruction such as this constitutes improper coercion of the jury's verdict.

11

Pua does not meet his burden to establish improper judicial coercion of the jury verdict.

## II.   ER 404(b) Evidence

Pua asserts that the trial court abused its discretion in allowing Phair to testify about the allegedly stolen car.  He asserts that the testimony constituted prejudicial prior bad act evidence that was improperly admitted under ER 404(b).

ER 404(b) provides that evidence of other crimes, wrongs, or acts is inadmissible to prove character and show action in conformity with it.  However, such evidence may be admissible for other purposes, like "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  ER 404(b).  We review a trial court's evidentiary rulings for abuse of discretion.  Cox v. Spangler, 141 Wn.2d 431, 439, 5 P.3d 1265, 22 P.3d 791 (2000).  We review a trial court's interpretation of an evidentiary rule de novo.  State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

During pretrial motions, the parties characterized Phair's testimony as his belief that the car was stolen.  The State explained that it would not present the testimony as evidence that Pua in fact committed a prior bad act, but, rather, to explain Phair's actions.  However, Phair's testimony could reasonably be interpreted to implicate Pua as having committed theft or, at the very least, knowing possession of stolen property.[8]

However, even if Phair's testimony was improper ER 404(b) evidence, Pua does not establish prejudice as a result of its admission.  The erroneous admission of ER

---

[8] Testimony regarding a witness's belief about a bad act may be inadmissible under ER 404(b).  See, e.g., State v. Asaeli, 150 Wn. App. 543, 577-78, 208 P.3d 1136 (2009) (trial court improperly admitted ER 404(b) evidence regarding witnesses' belief that defendants were gang members).

404(b) evidence requires reversal only if there is a reasonable probability that the error materially affected the outcome. State v. Everybodytalksabout, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). An error is harmless if the evidence is of minor significance as compared to the evidence as a whole. Id. at 469.

Here, there was ample evidence to support Pua's convictions of second degree assault and third degree theft. Phair testified in detail about the assault. He stated that Pua struck him repeatedly with a bat, first on his forearm and ribs, and then 10 to 15 times on his upper thigh. Phair stated that he had a permanent indentation on his thigh from the attack. In addition, Phair testified that Pua grabbed his cell phone and that Pua stripped him down and took various items from Phair's pockets. Testimony from other witnesses corroborated Phair's account of his injuries and the theft. For example, Phair's mother explained that when she saw Phair on the day of the assault, he had injuries on his face, chest, and arm. She also stated that Phair could not walk and that his thigh was bruised and swollen. She further testified that she did not see Phair with his cell phone after July 4, 2013. Detective Scott Tompkins also testified that he observed bruising on Phair's face, legs, and back when he took Phair's statement six days after the incident.

The jury found Pua not guilty of robbery in the first degree, robbery in the second degree, and intimidating a witness. This shows that the jury did not use Phair's testimony about a stolen car to conclude that Pua must be guilty of stealing property from him as charged. The stolen car testimony had even less relevance to the assault charges. The conviction turned on the jury believing Phair's testimony about the beating he endured. If believed, the stolen car reference could add nothing. Phair's testimony about the car is

"of minor significance." Id. Pua does not show that there was a reasonable probability that Phair's statement materially affected the outcome of trial.

We affirm.

Appelwick, J

WE CONCUR:

Spearman, C.J.

Cox, J.