IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 33281-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY TRAMELL SPEARMAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — After a jury trial, the trial court convicted Anthony Spearman of

one count of delivery of a controlled substance. On appeal, Spearman contends the trial

court committed error when he delivered to the jury the standard 11 *Washington*

*Practice: Washington Pattern Jury Instructions: Criminal* 4.01, at 85 (3d ed. 2008)

(WPIC), regarding reasonable doubt. He also challenges the imposition of legal financial

obligations and the obligation to provide a deoxyribonucleic acid (DNA) sample. We

affirm the trial court.

## FACTS

On August 21, 2014, Anthony Tramell Spearman sold Janette Rojas three

oxycodone pills. On October 2, 2014, Spearman sold Rojas ten hydrocodone pills. Rojas

informed the Walla Walla Police Department of the sales.

## PROCEDURE

The State of Washington charged Anthony Spearman with one count of delivery

of oxycodone and one count of delivering hydrocodone.  The case proceeded to a jury

trial.  At the close of evidence, the trial court instructed the jury concerning the State's

burden of proof:

> The defendant has entered a plea of not guilty.  That plea puts in
> issue each element of each crime charged.  The state is the plaintiff and has
> the burden of proving each element of each crime beyond a reasonable
> doubt.  The defendant has no burden of proving that a reasonable doubt
> exists as to these elements.
>
> A defendant is presumed innocent.  This presumption continues
> throughout the entire trial unless during your deliberations you find it has
> been overcome by the evidence beyond a reasonable doubt.
>
> A reasonable doubt is one for which a reason exists and may arise
> from the evidence or lack of evidence.  It is such a doubt as would exist in
> the mind of a reasonable person after fully, fairly and carefully considering
> all of the evidence or lack of evidence.  If, from such consideration, you
> have an abiding belief in the truth of the charge, you are satisfied beyond a
> reasonable doubt.

Clerk's Papers (CP) at 27.  Anthony Spearman registered no objection to the instruction.

The jury found Anthony Spearman guilty of one count of delivery of a controlled

substance.  The trial court sentenced Spearman to eighty-four months in prison.

Throughout trial, Anthony Spearman emphasized that, before his arrest, he worked

full-time and would likely work again when released from prison.  Spearman testified:

> [DEFENSE COUNSEL]: Where were you working?
> [SPEARMAN]: At Tyson Foods.
> Q  Okay.  How long had you worked there?
> A  I work there from March all the way to October.

Report of Proceedings (RP) at 315. During his sentencing allocution, Spearman declared:

2

Your Honor, I feel that the jury found me guilty of the appropriate crime. I was working the whole time. I was making strides in the right direction. I have a job still when I get out that is willing to pay for six months of treatment when I get out.

RP at 400. A friend commented:

MR. SAMUEL KELLY: . . . And [IBP Tyson] do[es] give you a chance after you have been incarcerated for drugs, they do let you come back after you get out and continue your work. And I think that should happen to Anthony so he can be on the right track.

RP at 404. Spearman's counsel remarked:

[DEFENSE COUNSEL]: And, your Honor, I just wanted to make it clear—and this came out at trial—that Mr. Spearman was, in fact, working full time. This—
THE COURT: No. I find that he was. I understand that.
. . . .
[DEFENSE COUNSEL]: . . . He is hoping to get back to work as soon as he can.

RP at 412.

[THE COURT]: But before I get to that, I want to talk about court costs, fees and fines.
The only fine that I need counsel to address is the VUCSA fine.
[DEFENSE COUNSEL]: Your Honor, he is hoping to get back to work, but obviously it is going to be some time and probably I would be able to address it better if I knew how long that was going to be and whether he has his job waiting for him. But I would ask you to waive the fine if the Court is willing to do that in its discretion.
THE COURT: I will see what he has to pay back between fees, fines and the VUCSA fine will be waived. Your total obligation is $2,525. And that will begin 90 days after release.
THE DEFENDANT: And, your Honor, would that—with the LFO, I can—I can promise you I will make that a top priority if I get my job back to pay these fines off as soon as possible.

3

RP at 413-14.

The trial court imposed legal financial obligations of $200 in court costs, $250 in jury fees, $100 in sheriff fees, a $500 victim assessment, $775 for court-appointed attorney fees, $500 for the drug enforcement fund, a $100 criminal laboratory fee, and a $100 biological sample fee. The judgment and sentence included the following language:

> 2.5 ABILITY TO PAY LEGAL FINANCIAL OBLIGATIONS. (RCW 9.94A.760) The court has considered the defendant's past, present and future ability to pay legal financial obligations, including the defendant's financial resources and the likelihood that the defendant's status will change. The court specifically finds that the defendant has the ability or likely future ability to pay the legal financial obligations ordered herein.

CP at 57.

> 4.7 (X) DNA TESTING. The defendant shall have a biological sample taken for the purposes of DNA identification analysis. RCW 43.43.754.

CP at 62.

## LAW AND ANALYSIS

On appeal, Anthony Spearman contends: (1) the trial court provided a constitutionally defective reasonable doubt instruction, (2) the trial court erred by imposing discretionary legal financial obligations, (3) the trial court unconstitutionally imposed a DNA collection fee, and (4) the trial court unconstitutionally mandated that Spearman provide another DNA sample.

4

Jury Instruction

Anthony Spearman assigns error to the reasonable doubt jury instruction. We review a challenge to the language of a jury instruction de novo, in the context of the instructions as a whole. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007); *In re Pers. Restraint of Hegney*, 138 Wn. App. 511, 521, 158 P.3d 1193 (2007). Jury instructions are upheld on appeal if they allow the parties to argue their theories of the case, do not mislead the jury, and properly inform the jury of the applicable law. *State v. Bennett*, 161 Wn.2d at 307.

The trial court based its reasonable doubt jury instruction on WPIC 4.01. Anthony Spearman argues that the language in WPIC 4.01, that defines a "reasonable doubt" as "one for which a reason exists," directs jurors to articulate a reason for forming a reasonable doubt. Thus, Spearman contends, the instruction erroneously requires jurors to have more than a reasonable doubt to acquit. He asserts that the instruction mirrors the fill-in-the-blank prosecutorial arguments that Washington courts invalidated because the arguments shift the burden of proof to the accused. Finally, Spearman challenges the language describing reasonable doubt as the abiding belief "in the truth of the charge," as a misstatement of the burden of proof in that the instruction improperly focused the jury on a search for the truth.

Anthony Spearman failed to object to the jury instruction before the trial court.

5

Generally, a party who fails to object to jury instructions in the trial court waives a claim of error on appeal. *State v. Smith*, 174 Wn. App. 359, 364, 298 P.3d 785 (2013); RAP 2.5(a). However, "[m]anifest errors affecting a constitutional right may be raised for the first time on appeal." *Smith*, 174 Wn. App. at 365. The Supreme Court reiterated the manifest constitutional error analysis saying:

> [W]e ask two questions: (1) Has the party claiming error shown the error is truly of a constitutional magnitude, and if so, (2) has the party demonstrated that the error is manifest?

*State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). We address separately Spearman's two challenges to the jury instruction. We find no error. Therefore, the trial court committed no manifest constitutional error.

Jury instruction language of an "abiding belief" or an "abiding conviction" in "the truth of the charge" has withstood challenge in Washington for more than a half century. In *State v. Mabry*, 51 Wn. App. 24, 25, 751 P.2d 882 (1988), we upheld an almost identical concluding statement in WPIC 4.01, as revised in 1982. The instruction at issue used the expression "*after* such consideration" rather than the language now used of "*from* such consideration." The *Mabry* court observed that Washington courts approved modified versions of the instruction in *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959) and *State v. Walker*, 19 Wn. App. 881, 578 P.2d 83 (1978). We emphasized that, when reviewing "reasonable doubt" instructions, courts refuse to isolate a particular

6

phrase and instead construe the instruction as a whole. *State v. Mabry*, 51 Wn. App. at 25.

In *State v. Pirtle*, 127 Wn.2d 628, 904 P.2d 245 (1996), our Supreme Court addressed a challenge to a trial court's modification of the concluding sentence of WPIC 4.01 to sharpen the focus on a juror's doubt. The modification read: "'If, after such consideration[,] you *do not* have an abiding belief in the *truth* of the charge, [then] you *are not* satisfied beyond a reasonable doubt.'" *State v. Pirtle*, 127 Wn.2d at 656 (emphasis added) (first alteration in original). The high court upheld the revised instruction:

> Without the last sentence, the jury instruction here follows WPIC 4.01, which previously has passed constitutional muster. The addition of the last sentence does not diminish the definition of reasonable doubt given in the first two sentences, but neither does it add anything of substance to WPIC 4.01. WPIC 4.01 adequately defines reasonable doubt. Addition of the last sentence was unnecessary but was not an error.

*Pirtle*, 127 Wn.2d at 658.

Anthony Spearman contends that the more recent decisions of *State v. Emery*, 174 Wn.2d 741, 278 P.3d 653 (2012) and *State v. Berube*, 171 Wn. App. 103, 286 P.3d 402 (2012) require us to reconsider longstanding precedent. In *State v. Emery*, our Supreme Court held that the prosecutor committed misconduct when, in argument, he asked the jury to solve the case. The jury's role, according to the state Supreme Court is to

7

determine if the State proved guilt beyond a reasonable doubt, not to determine the truth

of what happened. In *State v. Berube*, this court affirmed that the jury does not search for

truth but determines whether the burden of proof has been carried by the party who bears

it.

The last sentence of WPIC 4.01 does not instruct the jury to "solve the case" or

"find the truth." *State v. Pirtle* remains controlling authority that without the last

sentence, the pattern instruction adequately defines reasonable doubt and that inclusion of

the optional sentence "does not diminish the definition." *Pirtle*, 127 Wn.2d at 658.

In *State v. Federov*, 181 Wn. App. 187, 324 P.3d 784, *review denied*, 181 Wn.2d

1009, 335 P.3d 941 (2014), this court rejected Anthony Spearman's argument. We held

that when "read in context, the 'belief in the truth' phrase accurately informs the jury its

'job is to determine whether the State has proved the charged offenses beyond a

reasonable doubt.'" *Federov*, 181 Wn. App. at 200 (quoting *State v. Emery*, 174 Wn.2d

at 760).

Courts have also upheld WPIC 4.01's "reasonable doubt" language. In *State v.*

*Bennett*, the Supreme Court wrote:

> Even if many variations of the definition of reasonable doubt meet
> minimal due process requirements, the presumption of innocence is simply
> too fundamental, too central to the core of the foundation of our justice
> system not to require adherence to a clear, simple, accepted, and uniform
> instruction. We therefore exercise our inherent supervisory power to
> instruct Washington trial courts not to use the *Castle* instruction. We have

8

approved WPIC 4.01 and conclude that sound judicial practice requires that this instruction be given until a better instruction is approved. Trial courts are instructed to use the WPIC 4.01 instruction to inform the jury of the government's burden to prove every element of the charged crime beyond a reasonable doubt.

161 Wn.2d at 317-18 (2007).

Washington courts have approved the relevant language of WPIC 4.01 as constitutionally sound for decades. As noted in *State v. Thompson*, 13 Wn. App. 1, 4, 533 P.2d 395 (1975), the phrase "a doubt for which a reason exists" does not direct the jury to assign a reason for any doubt, but merely mentions that doubt must be based on reason and not something vague or imaginary. In *State v. Emery*, 174 Wn.2d at 759-60 (2012), the court approved the State's argument that identified reasonable doubt as a doubt for which a reason exists. Most recently, the Washington Supreme Court in *State v. Kalebaugh*, 183 Wn.2d 578 (2015) reaffirmed that WPIC 4.01 is the correct legal instruction on reasonable doubt.

## Legal Financial Obligations

Anthony Spearman argues that the trial court erred by failing to conduct an individualized inquiry into his current or future ability to pay legal financial obligations. The State responds that the trial court did not need to inquire because Spearman voluntarily presented evidence of his future ability to pay. We agree with the State.

9

In *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015), our Supreme Court clarified that RCW 10.01.160(3) requires the trial court "do more than sign a judgment and sentence with boilerplate language stating that it engaged in the required inquiry," before imposing legal financial obligations. Rather, the "record must reflect that the trial court made an individualized inquiry into the defendant's current and future ability to pay." *Blazina*, 182 Wn.2d at 838. This inquiry includes evaluating a defendant's financial resources, incarceration, and other debts, including restitution. *Blazina*, 182 Wn.2d at 838-39. This inquiry is only required for the imposition of discretionary legal financial obligations. *State v. Lundy*, 176 Wn. App. 96, 103, 308 P.3d 755 (2013).

Our trial court imposed discretionary legal financial obligations. Nevertheless, the court heard extensive testimony that Anthony Spearman's job would await his release from prison. Thus we affirm the imposed legal financial obligations.

Constitutionality of DNA Collection Fee

Anthony Spearman argues that imposition of a $100 DNA collection fee violates both the due process and equal protection clauses of the Washington State Constitution because the fee is imposed regardless of an accused's ability to pay. The State responds that, because Spearman possesses the future ability to pay the fee, he does not fall within the class of people who cannot afford to pay this fine and thus lacks standing to forward the constitutional challenge. We agree with the State.

10

Anthony Spearman did not raise this contention below. Failure to timely assert a right may result in a forfeiture of that right. *United States v. Olano*, 507 U.S. 725, 731,113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944). Nevertheless, a party may raise a manifest error affecting a constitutional right for the first time on appeal. RAP 2.5(a). We find manifest error only if the facts necessary to adjudicate the claimed error are in the record on appeal. *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995); *State v. Riley*, 121 Wn.2d 22, 31, 846 P.2d 1365 (1993).

In *State v. Stoddard*, 192 Wn. App. 222, 366 P.3d 474 (2016), this court refused to entertain Gary Stoddard's constitutional challenge to the DNA collection fee because of a lack of evidence as to Stoddard's ability to pay the fee. In this appeal, the evidence shows, if anything, Anthony Spearman's ability to pay since he will return to his job on release from prison. Therefore, we decline to review Spearman's equal protection and due process arguments, which were raised for the first time on appeal.

Second Submission to DNA Collection

Anthony Spearman argues that the trial court abused its discretion by ordering him to submit to a DNA collection because he has multiple earlier convictions of felonies. The State argues instead that the judgment only orders compliance with RCW 43.43.754

11

and the statute requires the collection of the DNA sample only if the Washington State Patrol lacks a sample. RCW 43.43.754(2) declares:

> If the Washington state patrol crime laboratory already has a DNA sample from an individual for a qualifying offense, a subsequent submission is not required to be submitted.

Anthony Spearman, before the trial court, neither objected to the DNA collection fee nor provided proof that the State already collected his DNA. Spearman's judgment and sentence includes a criminal history of multiple felony convictions, but he still lacks proof that the state patrol crime laboratory maintains a DNA sample from him. Given the lack of record, we affirm the trial court's ruling.

## CONCLUSION

We affirm Anthony Spearman's conviction and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____     _____
Korsmo, J.                          Siddoway, J.

12