IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31642-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID E. NICKELS, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — David E. Nickels was convicted of first degree murder in Grant County. At trial, the court issued jury instructions we have previously deemed structural error. *State v. Smith*, 174 Wn. App. 359, 298 P.3d 785, *review denied*, 178 Wn.2d 1008 (2013). We find no reason to depart from *Smith*, and thus conclude the instructions in Mr. Nickels's case were also erroneous and require reversal.

Apart from his claims regarding instructional error, Mr. Nickels raises a number of additional challenges to his trial and conviction. Given our order of reversal, most are either moot or can be addressed on remand. With respect to the few issues remaining appropriate for review, we disagree with Mr. Nickels's contentions.

Mr. Nickels's conviction is therefore reversed without prejudice to reassert, before the trial court, assignments of error not addressed on appeal, and his case is remanded for retrial.

## FACTS

On December 29, 2009, law enforcement officers discovered a man named Sage Munro had been shot and killed at his home. Footprints in the area drew attention to Mr. Munro's pickup truck as well as a set of handcuffs in the front yard. Also found in the area was a .45-caliber shell casing. After some investigation, the police focused their attention on Mr. Nickels.

Law enforcement ran a deoxyribonucleic acid (DNA) analysis of samplings from Mr. Munro's pickup, the handcuffs, and the .45-caliber shell casing. An inseparable DNA profile mixture of at least three people was discovered on the handcuffs. Mr. Nickels was deemed a potential contributor to the mixed DNA profile. All other witnesses or officers tested were excluded as donors. No other forensic evidence was

2

recovered.

On June 16, 2010, the State charged Mr. Nickels with premeditated murder in the first degree. RCW 9A.32.030. Prior to trial, Mr. Nickels filed a motion to suppress his DNA evidence, arguing it had been seized without a proper warrant. The motion was denied. At trial, the court's "to convict" instruction deviated from the standard instruction set forth in the Washington Pattern Jury Instructions. Rather than informing the jury it would be their "duty" to return a guilty or not guilty verdict, depending on whether the elements had been proved beyond a reasonable doubt, the "to convict" instruction stated as follows:

> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then *you should* return a verdict of guilty.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then *you should* return a verdict of not guilty.

Clerks Papers (CP) at 3909 (emphasis added). The jury found Mr. Nickels guilty as charged.

After the verdict, Mr. Nickels filed motions requesting a new trial. One of the issues raised was the permissive language in the court's "to convict" instruction, emphasized above. The trial court declined to grant a new trial without addressing Mr. Nickels's claim of instructional error. This appeal followed.

3

ANALYSIS

*Instructional error regarding the court's "to convict" instruction*

Pursuant to the reasoning in *Smith*, the use of the word "should" in Mr. Nickels's "to convict" instruction constituted structural error. The State nevertheless argues reversal is inappropriate because the error was harmless. This argument fails to recognize the meaning of structural error. A structural error is one requiring reversal regardless of prejudice. A harmless error analysis is inapplicable. *Smith*, 174 Wn. App. at 368. According to the reasoning set forth in *Smith*, Mr. Nickels's conviction must be reversed.

Apart from its arguments regarding harmless error, the State also contends *Smith* was wrongly decided and recommends we not follow *Smith*. We decline this invitation. *Smith* is a decision from this division. It involved a jury instruction issued by the same judge who presided over Mr. Nickels's case. Under the doctrine of stare decisis we will reject our prior holdings only on a clear showing that a previously-established rule is incorrect and harmful. *State v. Otton*, 185 Wn.2d 673, 678, 374 P.3d 1108 (2016); *Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett*, 146 Wn.2d 29, 37 n.9, 42 P.3d 1265 (2002). Occasionally, we will reject prior precedent if the legal underpinnings have changed or disappeared due to intervening authority. *Otton*, 185 Wn.2d at 678. That standard is not met here. Mr. Nickels's conviction is therefore reversed without prejudice

4

No. 31642-4-III
*State v. Nickels*

and remanded for retrial.

*Seizure of DNA evidence*

Mr. Nickels contends his DNA evidence should have been suppressed because he was seized pursuant to an illegal "track and trace" (also called a "trap and trace") of his cell phone and the affidavit supporting the warrant to collect his DNA sample misrepresented material facts. CP at 1972, 5998. The circumstances pertinent to Mr. Nickels's suppression argument are as follows:

In March 2010, Grant County Detective Ryan Rectenwald obtained a toothbrush allegedly used by Mr. Nickels through a consent search. Test results received on April 13, 2010, revealed the DNA profile developed from the toothbrush was a potential contributor to the mixed DNA found on the handcuffs from the crime scene. Based on this information, Detective Rectenwald decided he needed to obtain a DNA sample directly from Mr. Nickels in order to perform a comparison of the DNA left at the scene.

In an effort to locate Mr. Nickels, Detective Rectenwald applied for and received a track and trace order from Grant County Superior Court, dated May 3, 2010. Detective Rectenwald subsequently received information indicating Mr. Nickels was in Montana. He then elicited the help of Lewis and Clark County (Montana) Detective Michael Mlekush, who offered to obtain a warrant for Mr. Nickels's DNA. Detective Mlekush's

5

warrant application erroneously stated Grant County had previously issued a warrant for Mr. Nickels's DNA. However, Detective Mlekush did not base his probable cause statement on the alleged prior warrant. Instead, he set forth the status of the Nickels investigation, including the DNA test results regarding Mr. Nickels's toothbrush. A Montana warrant was obtained on May 6, 2010.

After securing the warrant, Detective Mlekush began looking for Mr. Nichols. On May 10, 2010, Detective Rectenwald relayed information to Detective Mlekush regarding the location of Mr. Nichols's cell phone. From what Detective Rectenwald can recall, the cell phone location information came from Verizon Wireless, to the Drug Enforcement Administration, and then to him. Once Mr. Nickels was located, he was detained and submitted to the court-ordered DNA swabs.

Information regarding how Mr. Nickels was located in Montana was somewhat unclear. Early in the pretrial discovery process, Detective Rectenwald told the defense there was "absolutely no track and trace being done" in Montana, and that the Montana police stopped Mr. Nickels during a random traffic stop. CP at 1990. Later, however, detectives Rectenwald and Mlekush, and another Montana deputy sheriff stated Detective Mlekush received updates indicating Mr. Nickels's cell phone had been traced to several locations in the Helena area. Detective Rectenwald acknowledged he sent that

6

information to Detective Mlekush.

Subsequent to these events, Detective Mlekush was dismissed from his law enforcement position for surreptitiously recording a meeting with his superiors. He pleaded guilty to a criminal offense in January 2012.

*Track and trace warrant*

Under the former RCW 9.73.260(4) (1998), the State could not collect a person's electronic data without a court order that specified the person, place, or thing to be searched or seized. Mr. Nickels does not assign error to the issuance of the track and trace order. Instead, he appears to contend the order was not lawfully served. He points to contradictory statements by Detective Rectenwald regarding execution and use of the order as well as statements by another detective that a track and trace order was never signed. Mr. Nickels's arguments do not demonstrate failure to comply with the statute or constitution. The record plainly shows an order was obtained prior to law enforcement efforts to trace Mr. Nickels's cell phone. In addition, billing records confirm that tracking was accomplished by going through Mr. Nickels's cell phone provider, Verizon Wireless. The record does not support the conclusion that Mr. Nickels's cell phone was traced without following applicable legal process.

*Probable cause to support the DNA search warrant*

Apart from the track and trace order, Mr. Nickels contends the Montana DNA warrant was invalid because it was based on a misstatement that a prior warrant had been issued in Washington. A warrant will only be invalidated based on factual inaccuracies if such inaccuracies are material to the court's probable cause determination. *State v. Chenoweth*, 160 Wn.2d 454, 462, 158 P.3d 595 (2007). This standard has not been met. While the DNA warrant application mistakenly represented that a prior warrant had been obtained in Washington, this information had no bearing on the issue of probable cause.

Mr. Nickels also contends the warrant was invalid because it was based on information supplied by Detective Mlekush, who had engaged in official acts of dishonesty. According to Mr. Nickels, the DNA warrant application should have included information regarding Detective Mlekush's misconduct because it was relevant to determining the warrant application's reliability. We are unpersuaded. A warrant application is reviewed according to information available at the time of issuance, not what is learned afterward. *See Chenoweth*, 160 Wn.2d at 476. Nothing in the record suggests that, at the time he applied for the DNA warrant, Detective Mlekush had engaged in misconduct. The warrant was issued in May 2010 and Detective Mlekush's misconduct took place in February 2011. Given this timeline, there was no adverse

8

No. 31642-4-III
*State v. Nickels*

credibility information that could have been disclosed.

Mr. Nickels claims the trial court should have held a *Franks* hearing to examine whether Detective Mlekush's misconduct extended back to the time of the warrant application. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). We disagree. A *Franks* hearing request must be supported by more than mere speculation. *Franks*, 438 U.S. at 171 ("To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine"). Mr. Nickels's request does not meet this standard. The defense has not proffered any reason to believe Detective Mlekush had engaged in impeachable misconduct at the time of the warrant application. The trial court correctly declined to conduct a hearing.

*Failure to preserve exculpatory evidence*

Mr. Nickels contends the State mismanaged his case by withholding exculpatory evidence and failing to preserve exculpatory text messages and cell phone records. During the proceedings in superior court, Mr. Nickels filed a motion to dismiss based on government misconduct allegations and due process violations. The motion was denied on the basis that Mr. Nickels had not shown prejudice.

9

No. 31642-4-III
*State v. Nickels*

To succeed on a motion to dismiss based on governmental misconduct under CrR 8.3(b), the defendant must demonstrate prejudice. *State v. Michielli*, 132 Wn.2d 229, 240, 937 P.2d 587 (1997). Similarly, a motion to dismiss based on a violation of the due process right to obtain exculpatory evidence requires a showing of materiality. *State v. Wittenbarger*, 124 Wn.2d 467, 474-75, 880 P.2d 517 (1994). Mr. Nickels has not made a sufficient showing under either standard.

Because this matter is being remanded for retrial, Mr. Nickels will have ample time to review and analyze the evidence he claims was improperly withheld.[1] The claim for dismissal based on untimely disclosure must fail.

As for Mr. Nickels's allegation regarding unpreserved evidence, the request for dismissal is premature. On remand, Mr. Nickels will presumably be able to elicit testimony from witnesses capable of testifying to the contents of the unpreserved text messages and phone calls. While such testimony may not be as strong as the records themselves, no prejudice is apparent at this stage of the proceedings. *See Wittenbarger*, 124 Wn.2d at 475 (the State's failure to preserve exculpatory evidence does not violate due process if the defendant is able "to obtain comparable evidence by other reasonably

---

[1] The evidence in question is a transcript of a recorded interview with an individual named Matthew Cox.

10

available means"). If, during the presentation of evidence on remand, the circumstances suggest Mr. Nickels has, in fact, been prejudiced by the State's failure to preserve evidence, relief can be sought from the trial court.[2]

*Remaining claims of error*

Mr. Nickels makes additional claims based on jury misconduct, evidentiary errors, and judicial bias. Because this case is being remanded for retrial, these claims need not be addressed here. The record suggests the evidence on remand is likely to change. In addition, because the original trial judge has retired, a new judicial officer will be involved. We decline to provide an advisory opinion as to how potential evidentiary issues should be handled during retrial. Instead, the parties should submit any evidentiary motions and objections to the new trial judge with analysis tailored to the evidence at hand. The trial judge will then have the discretion to make appropriate rulings, based on the applicable record. Unless the parties agree otherwise, evidentiary rulings made during Mr. Nickels's initial trial are not binding on retrial.

## CONCLUSION

Mr. Nickels's conviction is reversed and the matter is remanded for a new trial.

---

[2] In the event a motion to dismiss is made based on unpreserved evidence, the trial court should assess the merits of the motion *de novo*.

11

No. 31642-4-III
*State v. Nickels*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Korsmo, J.

12