# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49363-2-II |
| Respondent, | |
| v. | |
| CHRIS MARION MCNICHOLAS, | UNPUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — Chris Marion McNicholas appeals his convictions for theft in the first degree, identity theft in the first degree, and nine counts of forgery. We conclude that sufficient evidence supports McNicholas's convictions, that the trial court did not err when it admitted the evidence of a common scheme or plan, and that any deficiency of his trial counsel did not prejudice him.

In a statement of additional grounds (SAG), McNicholas asserts numerous additional errors. We affirm.

## FACTS

### I.    CRIMES

Between April and September 2014, McNicholas cashed or deposited nineteen checks from Caryl Audine Hitt totaling $52,495. McNicholas claimed that he had a contract with Hitt for $70,330 to work on her roof and install new windows in her home. He testified that these checks were advance payments pursuant to the contract, which required a down payment of $35,000.

At the time of trial, Hitt was ninety years old. She testified only as to her name and address and that she lived in Vancouver. She lived at that same address during the time period of the checks to McNicholas. Starting in 2011, Hitt's daughter, Kim Hitt,[1] had financial power of attorney over Hitt. Starting in late 2013, Hitt began to have problems with her memory.

Jennifer Melton, an employee at Hitt's bank, became alarmed about the checks written to McNicholas because they were inconsistent with Hitt's spending habits. Additionally, the signatures on many of the checks did not resemble Hitt's signature. Melton alerted Hitt and Kim about the issues with the checks and put a freeze on Hitt's account. She also contacted law enforcement and adult protective services. Several weeks later, McNicholas called Melton and asked "what F-ing right" she had to report his checks as fraudulent. 4 Report of Proceedings (RP) at 663. Melton said he displayed an angry and threatening tone.

Andyi Veruca, an investigator for adult protective services, investigated allegations of financial exploitation against Hitt and visited her in October 2014. She testified that Hitt "was confused or presented with confusion" and "didn't seem to be able to really follow conversation." 6 RP at 1035. She had to reintroduce herself at least twice during the interview and repeat the allegations concerning why she was there. She returned to Hitt's home the following day and Hitt did not remember Veruca or the purpose of her visit, despite having asked her to return.

Kim obtained a civil protection order prohibiting McNicholas from having contact with Hitt.

II.    CRIMINAL PROCEEDINGS

The State charged McNicholas with one count each of theft in the first degree, identity theft in the first degree, and contracting without a license, and nine counts of forgery. It also charged

---

[1] To avoid confusion, we refer to Kim Hitt by her first name. We intend no disrespect.

2

aggravating factors that the victim was particularly vulnerable or incapable of resistance and that the crime was a major economic offense or series of offenses on each count except contracting without a license. McNicholas pled guilty to contracting without a license and went to jury trial on the other eleven counts.

A.    HANDWRITING EVIDENCE

Andrew Szymanski, a forensic scientist who specialized in handwriting analysis, reviewed twenty-eight checks known to have been signed by Hitt and thirteen "questioned checks" that had been written to McNicholas. He also reviewed known samples of McNicholas's handwriting.

Szymanski opined that it was highly probable that Hitt had not written the payee information or the signature on the checks associated with the nine forgery counts. He also opined that it was probable that McNicholas wrote the endorsement signature on seven of those nine checks and on four others from Hitt that were not the subject of forgery charges. He also testified that McNicholas could not be identified or excluded as the writer of the payee information or Hitt's signatures on any of the checks.

Melton and Kim both had familiarity with Hitt's signature. Melton testified that the signature on each check charged as a forgery did not look like Hitt's and she would have questioned it. She also testified that she had never seen Hitt print her signature, as it was printed on at least several of the checks. Kim testified that none of the signatures on the checks charged as forgery counts looked like her mother's.

McNicholas offered testimony from Jacqueline Joseph, another handwriting expert. She critiqued Szymanski's report and decried the small number of samples of Hitt's signature and handwriting. She deemed the source of all the signatures to be inconclusive or indeterminable.

B. ER 404(b) EVIDENCE

1. Pretrial Motion

The trial court held a pretrial motion hearing on the admissibility of evidence regarding other incidents where McNicholas had manipulated elderly people to get money from them.

At the hearing on the motion, the State announced its intention to admit evidence of acts between McNicholas and three victims, Margaretta Yaddof, eighty years old, Shinae Lane, eighty-seven years old, and Helen McGinnis, eighty-nine years old. The State claimed this evidence showed both a common scheme or plan and McNicholas's intent.

McNicholas argued this case differed from the others because he had recorded his interactions with Hitt, he had executed a valid contract with Hitt, and that the incident with Hitt had not involved a warranty. He also argued that the age of the victims would make them particularly sympathetic to the jury, increasing the prejudicial effect of the evidence.

The court ruled based on a four part test. First, the court ruled that the misconduct had been proven by a preponderance of the evidence. Second, it ruled that the State sought to introduce the evidence to show a common scheme or plan and to establish intent. The court considered the similarities and differences between the cases and ruled that whether the contract between McNicholas and the particular victim was written or not did not affect its decision. Third, it ruled the evidence had relevance to an element of the crime by showing McNicholas intended to steal from Hitt. The evidence was also relevant as evidence of a common scheme or plan. Finally, the court weighed the evidence and ruled that its prejudicial effect did not outweigh its probative value, especially with a limiting instruction to the jury. The court ruled that the ER 404(b) testimony would be admissible.

4

        2.      Trial testimony

Yaddof testified that she was eighty years old and had lived alone for ten years. McNicholas sold her a new roof and installed it for her in 2011.

In November 2014, McNicholas came to her home in the evening when she was not expecting him. He told her he had inspected her roof and she needed to pay him $100. She asked him to leave but he remained for about thirty minutes. She refused to pay him and he went and sat in his truck in Yaddof's driveway.

Yaddof's son, Randy Yaddof,[2] lived next door. He came out and spoke to McNicholas. Randy told McNicholas that he would review the contract and see if the inspection was actually required and, if it was, they could do it another time. McNicholas told him he couldn't leave because he needed the $100 for gas money and wanted to do the inspection that night. Randy gave McNicholas his phone number and told him not to call his mother. McNicholas eventually left. Disregarding this direction, the following night, McNicholas called Yaddof and told her he still wanted his $100.

Lane testified that she was eighty-seven years old and had lived by herself in Vancouver for twenty-four years. The roof on her home had been rebuilt ten or fifteen years earlier.

In November 2014, Lane received a call about her roof and the man who called then arrived at her home. She wrote a check to the man. In an offer of proof outside the presence of the jury, Lane could not remember the name of the person who came to her home. When asked if anyone in the courtroom looked familiar, she said she didn't see the man. Neither party pursued any further questioning of Lane.

---

[2] To avoid confusion, we refer to Randy Yaddof by his first name. We intend no disrespect.

McGinnis testified that she was eighty-nine years old and had lived alone for eighteen years. In 2008 and 2009, McNicholas contracted with McGinnis to work on the windows of her home. After McNicholas completed the work, McGinnis paid him in full per the contracts, both of which came with a warranty.

In 2014, McGinnis thought there was an issue with her windows and she contacted McNicholas. He told McGinnis that she would owe him $300 to "install" or "instate" the insurance on the windows. 7 RP at 1348. When he arrived at her home, he said it should actually be $400. She eventually gave him $150 because she felt that she had to give him money to get him to leave. McNicholas never returned to work on the windows and never returned her money. It later turned out that there had not been anything wrong with the windows.

Before each of the above witnesses testified, the court read a limiting instruction to the jury that stated, "you may consider the evidence only for the purpose of determining whether or not it tends to show a common scheme or plan and/or intent to [ ] commit the crime of theft in the first degree in this case. You must not consider the evidence for any other purpose." 6 RP at 1142, 1171, 7RP at 1214, 1339-40.

C.    SEARCH OF VEHICLE

Cowlitz County Deputy Brady Spaulding applied for and obtained a search warrant for McNicholas's truck. In searching the vehicle, he found hundreds of documents, including bank records, letters, and manila folders associated with McNicholas's clients. He found folders associated with Betsy Miller, McGinnis, Lane, and Hitt.

Spaulding transferred these folders to Detective Fred Neiman of the Clark County Sheriff's Office who reviewed them. The folders associated with Miller, McGinnis, and Lane contained contracts between McNicholas's company, Pacific Coast Vinyl, and each customer. All of these

6

contracts were on triplicate paper with a white, canary, and pink form. The contracts stated: "original – office, canary – buyer, pink – file." 8 RP at 1461, 1469, 1475. At least one of the three copies was missing from each of the contracts. These folders also each contained various other documents, including specification sheets, schematics, receipts, invoices, customer notices, and letters.

Neiman also reviewed the folder pertaining to Hitt. It contained only a contract signed by Hitt and McNicholas and a protection order protecting Hitt from McNicholas. There were no other documents in the folder. All three copies of the contract were attached and still in the folder.

D.     EVIDENCE OF CONTRACT

McNicholas testified that all the money he received from Hitt constituted payment for a contract into which they had entered in April. Under the contract, McNicholas was to clean and resecure the roof of her home, replace the windows, and potentially rebuild the carport. Signatures ascribed to both McNicholas and Hitt were dated April 27, 2014. The total price of the contract was $70,330 with a $35,000 down payment. McNicholas denied writing any of the checks he claimed to have received from Hitt.

McNicholas testified that he also kept a number of documents associated with his work on Hitt's home at his home office. No invoices, commission sheets, or warranties existed for this job.

McNicholas stated that Hitt would not have been able to reside in her home while he performed the work so he tried to contact her daughter. He had no concerns about Hitt's ability to enter into a contract. He wanted to contact her daughter to make sure he would get paid at the conclusion of the project. McNicholas explained that on other jobs, he had problems getting paid on contracts with elderly people when their families became involved.

McNicholas recorded three conversations with Hitt which the jury heard. In the recordings, McNicholas tried to obtain a number for Kim, asked whether anyone had power of attorney over Hitt or if she made her own decisions, and mentioned that he had been helping her run errands, make doctors' appointments, and fix her roof leaks. In one of the recordings, Hitt said she was happy with everything McNicholas did for her and she had no complaints.

McNicholas testified that the reasons for the delay in the project occurred because he did not have all the money from Hitt for several months and he was still deciding what products to put in her home. Other delays happened because he wanted to make sure to talk to Kim to ensure he would be paid after the project was done. Once served with the protection order, McNicholas was "told that all contractual work was to cease and desist." 10 RP at 1864.

McNicholas further testified that he had contractors do "soffit and fascia" work on Hitt's home, which was the roof repair he had discussed in the recording. 10 RP at 1839, 1886. He testified that he sent Brandon Reed, a contractor, to Hitt's home to get the scope of work and then take care of the work. He stated that, in total, Reed billed soffit and fascia work for labor and materials, "removing and reinstalling and, and fixing some leaks in [Hitt's] home," as well as "some plumbing issues." 10 RP at 1888. He testified that, in September 2014, he became aware that Reed hadn't done some of the work he had billed and let him go.

The State offered testimony from Mike Puranen, general manager of Ecobest Exteriors ("Ecobest"), a company that rebuilt Hitt's carport and deck in 2011. The trial court admitted the contract between Hitt and Ecobest into evidence. The total fee for rebuilding her carport and deck was $7,800. Later that same year, Ecobest also removed and replaced Hitt's roof for $16,795. Ecobest provided a 10-year warranty on its work. In 2016, Hitt's roof and carport were the same as when Ecobest replaced them.

The State argued that the evidence indicated there had been no contract between Hitt and McNicholas because, if there had been, he would have done work in the nine months between the contract date and the protection order. The State compared the folders for other clients, which contained contracts and documentation, to the folder for Hitt, which contained only a contract with all three copies still attached and a copy of the protection order.

E.   VERDICT

The jury found McNicholas guilty on all counts. It also found that the aggravating factors that the victim was particularly vulnerable or incapable of resistance and the crime was a major economic offense or series of offenses applied to each count. With regard to the theft count, the jury filled out a special verdict form, answering that McNicholas both "obtain[ed] or exert[ed] unauthorized control over property or services of another" and that he obtained control over the property or services of another "by color or aid of deception." Clerk's Papers (CP) at 535.

III.   SENTENCE

At his sentencing hearing, McNicholas moved to be evaluated for a drug offender sentencing alternative (DOSA) sentence. In support of this request, McNicholas brought up ongoing cases he had in Cowlitz County involving methamphetamine and letters submitted by his family members referring to his drug problems. The State argued that a DOSA was inappropriate because Cowlitz County had rejected McNicholas for drug court and the issue of a potential DOSA had not come up during the lengthy period the case was pending.

The court asked McNicholas about the practicability of dealing with DOSA in the context of numerous remaining charges pending against McNicholas in both Clark and Cowlitz counties. McNicholas argued that if the court found he had an addiction and qualified for DOSA, it should isolate this case from those others and let the other cases run their course.

The court ruled that it did not see a reason to move forward with a DOSA evaluation because a DOSA sentence would neither be practical nor consistent with the jury's findings.

McNicholas also argued that his crimes constituted the same criminal conduct and that his offender score should be three. He contended that the total should end up at one count each of theft, identity theft, and forgery.

The court ruled that the forgery and identity theft did not constitute the same criminal conduct because they had different victims. Hitt was the only victim of the identity theft count, but the bank was also a victim of the forgeries. The court also ruled that the identity theft and theft counts had different criminal intent and were not the same criminal conduct. The court further ruled that each forgery count was associated with a different check on a different day, such that they did not occur at the same time and place and were not the same criminal conduct.

The court sentenced McNicholas to 43 months on the theft, 63 months on the identity theft, and 22 months on each forgery count. The theft and identity theft sentences ran consecutively and the forgery sentences ran concurrently with the first two counts and one another, for a total sentence of 106 months.

## ANALYSIS

### I.     SUFFICIENCY OF EVIDENCE

McNicholas claims that the trial court violated his due process rights by entering judgment against him when substantial evidence does not support the charges.[3] He contends that the State failed to prove beyond a reasonable doubt that Hitt did not author the disputed checks herself.

---

[3] McNicholas argues that "substantial evidence" does not support his convictions and therefore he was denied due process of law. We review this as a challenge to the sufficiency of the evidence supporting his convictions.

McNicholas contends that the lack of evidence on this issue invalidates all of his theft, identity theft, and forgery convictions.

To determine whether sufficient evidence supports a conviction, we view the evidence in the light most favorable to the State and determine whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt. *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009). In claiming insufficient evidence, "the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it." *State v. Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010). Any inferences "'must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

A person is guilty of theft in the first degree if he or she commits "theft of property or services exceeding $5,000 in value." CP at 503 (Instr. 9); RCW 9A.56.030(1). "Theft," as charged in this case, means either "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services," or "[b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a), (b).

A person is guilty of identity theft in the first degree when, "with intent to commit any crime, he or she knowingly obtains, possesses, uses, or transfers a means of identification or financial information of another person, and obtains money, goods, services, or anything else in excess of $1500 in value." CP at 508 (Instr. 14); RCW 9.35.020(2).

11

A person is guilty of forgery when, "with intent to injure or defraud, he or she falsely makes, completes, or alters a written instrument or possesses, utters, offers, disposes of, or puts off as true, a written instrument which he or she knows to be forged." CP at 512 (Instr. 18); RCW 9A.60.020(1).

The State's handwriting expert in this case testified that it was "highly probable Audine D. Hitt did not write payee information and signature" on any of the nine checks the State charged as forgeries. 5 RP at 897. He then explained in detail his reasons for concluding that Hitt did not author each of those checks. Melton and Kim, both familiar with Hitt's signature, also testified that the signatures on these checks did not look like Hitt's. McNicholas's handwriting expert testified that the origins of the signatures were inconclusive or indeterminable. She also went into detail about her analysis and criticized the State's expert's findings. All nine of the checks were written from Hitt to McNicholas and he testified that he endorsed and cashed or deposited all of them.

Taking the evidence in the light most favorable to the State, a reasonable jury could have found that McNicholas forged the checks beyond a reasonable doubt. Because these forgeries were the basis for the theft and identity theft charges, sufficient evidence supports McNicholas's convictions on all counts.

II.     ER 404(b) EVIDENCE

McNicholas contends that the trial court erred by admitting evidence under ER 404(b) that was more unfairly prejudicial than probative. He claims that the incidents with Yaddof and

McGinnis[4] were distinguishable from any of the charges relating to Hitt. He contends that these incidents were admitted only to prove that McNicholas was a "dishonest scammer" and should have been excluded under ER 403. Br. of Appellant at 22. We disagree.

A.    LEGAL PRINCIPLES

ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

"If the evidence is admissible for one of these purposes, a trial judge must determine whether the danger of undue prejudice from its admission outweighs the probative value of the evidence." *State v. Jackson*, 102 Wn.2d 689, 693, 689 P.2d 76 (1984).

The trial court has considerable discretion to consider what evidence is relevant and to balance its possible prejudicial impact against its probative value. *State v. Barry*, 184 Wn. App. 790, 801, 339 P.3d 200 (2014). Accordingly, we review a trial court's decision to admit evidence when a party objects based on relevance and prejudicial effect for a manifest abuse of discretion. *Barry*, 184 Wn. App. at 801-02. A trial court abuses its discretion when its decision is manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. *Barry*, 184 Wn. App. at 802.

---

[4] McNicholas assigns error to "evidence from four witnesses involving three prior events in which the defendant was involved." Br. of Appellant at 20. He states that "[a]ccording to Ms[.] Lane, about 10 years ago the defendant put a new roof on her home" and that he "came to her home uninvited and said that he would not leave until she paid him $300.00 for a roof inspection." Br. of Appellant at 10-11. McNicholas himself testified that he had done work for Lane, then later returned to her home to sell her an extended warranty. Because Lane never testified to any interactions with McNicholas, we address his arguments as to McGinnis's and the Yaddofs' testimony only.

We review a "trial court's decision to admit or deny evidence of a defendant's past crimes or bad acts under ER 404(b) for an abuse of discretion." *State v. Fuller*, 169 Wn. App. 797, 828, 282 P.3d 126 (2012). "A trial court abuses its discretion by not following the requirements of ER 404(b) in admitting evidence of a defendant's prior convictions or past acts." *Fuller*, 169 Wn. App. at 828. When a trial court admits evidence under ER 404(b), it must "'(1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence.'" *Fuller*, 169 Wn. App. at 828-29 (quoting *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009)). McNicholas limits his challenges to the purpose of admitting the evidence and whether the probative value outweighed the prejudicial effect, the second and fourth parts of this test.

B.     COMMON SCHEME OR PLAN

McNicholas contends that the "only relationship between the alleged other bad acts and the current charges was that they all generally related to the defendant's business." Br. of Appellant at 21. He attempts to distinguish the incidents with McGinnis and Yaddof on the bases he had contracts with McGinnis and Yaddof, whereas the State alleges he never had a contract with Hitt, and that the amount of money the State alleged he stole from Hitt was much larger.

A court may properly admit evidence of prior misconduct to show the existence of a common scheme or plan. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012). This evidence is admissible "(1) 'where several crimes constitute constituent parts of a plan in which each crime is but a piece of the larger plan' and (2) where 'an individual devises a plan and uses it repeatedly to perpetrate separate but very similar crimes.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. Lough*, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)). Evidence of the second type "is

14

admissible because it is not an effort to prove the *character* of the defendant. Instead, it is offered to show that the defendant has developed a plan and has again put that particular plan into action." *Gresham*, 173 Wn.2d at 422. To introduce evidence of this type, "the prior misconduct and the charged crime must demonstrate 'such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which' the two are simply 'individual manifestations.'" *Gresham*, 173 Wn.2d at 422 (quoting *Lough*, 125 Wn.2d at 860). The prior act and the charged crime "must be markedly and substantially similar," but "the commonality need not be 'a unique method of committing the crime.'" *Gresham*, 173 Wn.2d at 422 (quoting *State v. DeVincentis*, 150 Wn.2d 11, 19-21, 74 P.3d 119 (2003)).

In *Gresham*, the state charged the defendant with molestation of a young girl. 173 Wn.2d at 414. The court upheld the admission of four prior acts of molestation against four other victims. 173 Wn.2d at 423. The prior acts were similar to the charged crime because the defendant "took a trip with young girls and at night, while the other adults were asleep, approached those girls and fondled their genitals." *Gresham*, 173 Wn.2d at 422. The court recognized that differences existed between the incidents, such as the presence of oral sex, however these differences were "not so great as to dissuade a reasonable mind from finding that the instances are naturally to be explained as 'individual manifestations' of the same plan." *Gresham*, 173 Wn.2d at 423 (quoting *Lough*, 125 Wn.2d at 860).

Similar to the acts charged in this case, the incidents with Yaddof and McGinnis both involved McNicholas targeting elderly women who lived alone. In each instance, the trial court observed that McNicholas demanded payment for construction service that was not completed. In each, McNicholas had done some work for his targets, but he also tried to get more money than he

had earned. In the cases of McGinnis and Hitt, McNicholas specifically asked each whether her children helped with her finances.

Like *Gresham*, the prior conduct admitted as evidence of a common scheme or plan in this case was not identical to the charged conduct. The trial court considered the facts of each incident and analyzed the similarities and differences on the record. It applied the correct legal standard. We cannot say that the court abused its discretion by concluding that the incidents were similar enough to constitute part of the same scheme or plan of scamming elderly people under the guise of contracting services.

C.    PROBATIVE VS PREJUDICIAL

McNicholas contends that the introduction of this evidence exposed him to unfair prejudice because it "showed [him] to be a petty thief, a liar and a person who would bully older women." Br. of Appellant at 23. He emphasizes that the issues for trial were whether he had a valid contract with Hitt and whether he forged the nine checks at issue, and that his prior bad acts had no tendency to prove or disprove these facts. Therefore, he argues the prejudicial effect of the evidence outweighed its probative value. We disagree.

"Trial courts have considerable discretion to consider the relevancy of evidence and to balance 'the probative value of the evidence against its possible prejudicial impact.'" *Barry*, 184 Wn. App. at 801 (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)).

The trial court acknowledged that the testimony the State sought to introduce was prejudicial. It ruled that the age of the victims was "a component," but that it did not tip the balance in favor of making the evidence overly prejudicial. 2 RP at 302. It then ruled that the prejudice of the testimony did not outweigh its probative value, especially given that the jury could be provided a limiting instruction to only consider the evidence for the purposes for which it was

offered. The trial court did not abuse its discretion by concluding that the prejudicial effect of the Yaddofs' and McGinnis's testimony did not outweigh their probative value.

III. INEFFECTIVE ASSISTANCE OF COUNSEL

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to propose a good faith claim of title defense jury instruction. He claims that the essence of his defense at trial was that he had obtained each check from Hitt pursuant to a valid contract to perform services for her. He also claims that this instruction would have created a reasonable likelihood the jury would have found him not guilty. We disagree.

A. LEGAL PRINCIPLES

The Sixth Amendment to the United States Constitution and Article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011).

We review claims of ineffective assistance of counsel de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To prevail on a claim of ineffective assistance of counsel, the defendant must show both (1) that defense counsel's representation was deficient, and (2) that the deficient representation prejudiced the defendant. *Grier*, 171 Wn.2d at 32-33. Representation is deficient if, after considering all the circumstances, the performance falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland*, 466 U.S. at 688). Prejudice exists if there is a reasonable probability that, except for counsel's errors, the results of the proceedings would have differed. *Grier*, 171 Wn.2d at 34. If either prong is not satisfied, the defendant's claim fails. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

17

A defendant faces a strong presumption that counsel's representation was effective. *Grier*, 171 Wn.2d at 33. Legitimate trial strategy or tactics cannot serve as the basis for a claim of ineffective assistance of counsel. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009).

B.      GOOD FAITH CLAIM OF TITLE DEFENSE

"Theft" is defined, as charged in this case, to mean "[t]o wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services," or "[b]y color or aid of deception to obtain control over the property or services or another or the value thereof, with intent to deprive him or her of such property or services." RCW 9A.56.020(1)(a), (b). It is a defense to theft that "[t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable." RCW 9A.56.020(2)(a).

The pattern instruction for the good faith claim of title defense to theft states: "It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even if the claim is untenable." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 19.08, at 319 (3rd ed. 2008). This defense has "at least two elements: (1) an open and avowed taking of property and (2) a good faith claim of title to the property." *State v. Ager*, 128 Wn.2d 85, 95, 904 P.2d 715 (1995).

"Where evidence supports the giving of an instruction on the defense of good faith claim of title, failure to give such an instruction is reversible error." *State v. Pestrin*, 43 Wn. App. 705, 710, 719 P.2d 137 (1986). The trial court is not required to give a good faith claim of title instruction on a theft by deception charge. *State v. Stanton*, 68 Wn. App. 855, 868, 845 P.2d 1365 (1993).

18

In *State v. Casey*, the defendant was charged with theft by deception for scamming elderly persons by overcharging them for substandard paving services. 81 Wn. App. 524, 525-26, 915 P.2d 587 (1996). The defendant argued he should be entitled to a good faith claim of title defense, but the court clearly stated that "the defense is not available in a trial for theft by deception." *Casey*, 81 Wn. App. at 526. *Casey* noted that the instruction is inappropriate in theft by deception cases because "a good faith claim of title would negate a specific element of the crime, namely deprivation '[b]y color or aid of deception.'" 81 Wn. App. at 527 (quoting RCW 9A.56.020(1)(b)).

The information in this case charged McNicholas with theft by deception and theft by wrongfully obtaining or exerting unauthorized control over Hitt's property. The jury instructions provided that if the jury found that either alternative had been proven beyond a reasonable doubt, then it should return a verdict of guilty. The jury returned a special verdict and found the State had proven both alternatives.[5] Because the jury found both alternatives, McNicholas has failed to prove prejudice. We reject his ineffective assistance of counsel claim.

SAG

I. INEFFECTIVE ASSISTANCE OF COUNSEL

McNicholas contends that he received ineffective assistance of counsel for a multitude of reasons.

A. LANE'S TESTIMONY

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to move to strike Lane's testimony.

---

[5] At oral argument, McNicholas conceded that, given a special verdict in which the jury found both alternative grounds for the theft, he would be unable to show prejudice.

In order to show ineffective assistance of counsel, McNicholas must show that his trial counsel's decision to not move to strike Lane's testimony was not legitimate trial strategy or tactics. *Kyllo*, 166 Wn.2d at 863. However, in her own examination of McNicholas, defense counsel asked him about his interactions with Lane and elicited testimony that Lane had invited him to come to her home, let him in, and given him flowers. This evidence did not prejudice McNicholas and potentially helped his defense. Her decision could have been tactical and there is no prejudice.

### B. FAILURE TO MOVE FOR SPEEDY SENTENCE

McNicholas contends that he received ineffective assistance of counsel because his trial counsel "fail[ed] to ask for a motion for speedy sentence." SAG at 1. He claims, if she had, he could have been transported to Cowlitz County to resolve pending cases there and then received a DOSA.

The Sentencing Reform Act of 1981 (SRA) requires sentencing hearings to "be held within forty court days following conviction" absent a motion and showing of good cause for extension by either party. RCW 9.94A.500(1).

The court sentenced McNicholas on August 17, 2016, approximately 30 days after the guilty verdicts. He received a speedy sentence.

### C. FAILURE TO MOVE TO SUPPRESS EVIDENCE

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to move to suppress evidence found in his truck in Cowlitz County. He fails to provide any substantive argument for why such a motion was warranted or would have been granted. Though McNicholas need not cite to the record or authority, he must still "'inform the

20

court of the nature and occurrence of alleged errors.'" *State v. Thompson*, 169 Wn. App. 436, 493, 290 P.3d 996 (2012) (quoting RAP 10.10(c)). We do not consider this argument.

D.    FAILURE TO OBJECT TO BANK RECORDS

McNicholas contends that he received ineffective assistance of counsel because his trial counsel did not object to subpoenas for his bank records. He claims that he had a Fourth Amendment privacy interest in the records and they were only made available to the bank for a "limited purpose." SAG at 16.

*United States v. Miller* held that individuals have "no protectable Fourth Amendment interest" in subpoenaed bank records. 425 U.S. 435, 437, 96 S. Ct. 1619, 48 L. Ed. 2d 71 (1976). When depositing at a bank, "[t]he depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." *Miller*, 425 U.S. at 443. McNicholas's counsel was not deficient.

E.    FAILURE TO CALL ADDITIONAL WITNESSES

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to call additional witnesses, in particular two individuals he names in his SAG.

To prevail on an ineffective assistance of counsel claim, McNicholas must show prejudice. *Grier*, 171 Wn.2d at 33. Because he has not identified what any of his proposed witnesses would have testified to, he cannot show how their testimony would have been reasonably likely to change the outcome of the trial. Without any indication how these witnesses would have testified, McNicholas also cannot show that his attorney's conduct fell below an objective standard of reasonableness. The content of McNicholas's proposed witnesses' testimony is outside the record and we do not consider it. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

McNicholas may raise matters outside the record in a personal restraint petition. *McFarland*, 127 Wn.2d at 335.

F.      FAILURE TO CALL FOR AN ER 404(b) HEARING

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to "have a hearing for a[n] offer of proof that a prior bad act probably occurred" and failed to argue the ER 404(b) evidence was inadmissible. SAG at 16

Contrary to McNicholas's claims, his attorney did move to exclude all ER 404(b) evidence and the court heard lengthy arguments at a pretrial hearing on this issue. We deny this claim.

G.      FAILURE TO MOVE FOR A "LASTING HEARING"

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to move for a "lasting hearing" or "perpetuation depositions" for Hitt and the 404(b) witnesses, presumably given their age and Hitt's declining mental state. SAG at 16.

McNicholas has not provided any indication of what Hitt would have testified to in a deposition to preserve her testimony. Because the content of Hitt's testimony in a perpetuation deposition is not in the record, we do not consider it. *McFarland*, 127 Wn.2d at 335.

H.      FAILURE TO FILE A *CRAWFORD* MOTION

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to file a motion under *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). He makes some arguments and statements about the legal status of "business records" as testimonial but does not indicate in what way a *Crawford* violation occurred in his case. We deny relief on this issue.

I.    FAILURE TO RAISE A FOURTH AMENDMENT ARGUMENT

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to raise a Fourth Amendment argument. He does not indicate what this argument would have been or how his Fourth Amendment rights were violated. He has not shown how his trial counsel was deficient.

J.    FAILURE TO MOVE FOR *DAUBERT* HEARING

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to move for a *Daubert* hearing to determine the admissibility of the handwriting expert analysis. SAG at 17; *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

*State v. Copeland* declined to import the federal *Daubert* standard for admissibility of novel scientific evidence in criminal cases. 130 Wn.2d 244, 251, 922 P.2d 1304 (1996). It maintained the *Frye*[6] standard. *Copeland*, 130 Wn.2d at 251.

McNicholas has not alleged that handwriting evidence is the type of "novel scientific evidence" requiring analysis under *Frye*. Washington courts have allowed handwriting evidence for decades. *See, e.g.*, *State v. Haislip*, 77 Wn.2d 838, 841, 467 P.2d 284 (1970). McNicholas has not shown any deficiency or prejudice.

K.    FAILURE TO OBJECT TO ILLEGALLY SEIZED PROPERTY

McNicholas contends that he received ineffective assistance of counsel because his trial counsel failed to "object to 'a manifest error' . . . affecting a constitutional right," namely his illegally seized property. SAG at 17. This claim appears to be duplicitous of his claim that his attorney failed to move to suppress evidence and we do not address it further.

---

[6] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

II.     LAY WITNESS OPINION[7]

McNicholas contends that the trial court erred by admitting lay witness opinion testimony by Kim about her mother's signature.

"The general rule is that appellate courts will not consider issues raised for the first time on appeal.  However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right." *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007) (statute omitted) (case citation omitted).  The defendant "must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial.  It is this showing of actual prejudice that makes the error 'manifest,' allowing appellate review." *Kirkman*, 159 Wn.2d at 926-27.

Because McNicholas has not shown how the admission of Kim's testimony about her mother's signature constituted manifest constitutional error and he did not object to her testimony below, we do not consider this argument.

III.     PREACCUSATION DELAY

McNicholas contends that his due process rights were violated by the State's preaccusation delay in charging him.  He contends that the State's negligent delay in charging him nine months after the no-contact order issued prejudiced him because Hitt's mental state deteriorated, causing her to look more vulnerable to a jury and making her unable to corroborate his story.

Because the right to a speedy trial does not accrue before prosecution, claims of preaccusation delay are tested under the due process clause.  *State v. Bernson*, 40 Wn. App. 729,

---

[7] Prior to this claim for relief, McNicholas notes "the courts stipulation suspected forged checks" and cites to a section of the record where the Court reads a stipulation as to the chain of custody for the suspected forged checks to the jury. SAG at 1.  This assertion does not appear to be a claim for relief and we do not address it.

733-34, 700 P.2d 758 (1985). "Under this test, the accused must specifically demonstrate the delay caused actual prejudice to his defense." *Bernson*, 40 Wn. App. at 734.

McNicholas's claim that Hitt's memory caused her to no longer be in a position to corroborate his story is unsupported by the record. On October 14, 2014, Hitt completed an affidavit that she had issued two checks to McNicholas for minor repairs and that fifteen other checks were neither authorized nor signed by her. Because McNicholas has not provided any indication that Hitt's testimony would have corroborated his story, he has not shown any prejudice caused by preaccusation delay.

IV.    PROSECUTORIAL MISCONDUCT

McNicholas contends that the prosecutor committed misconduct by (1) submitting less than one third of their comparable handwriting samples to Szymanski for analysis, (2) trying to shift the burden in closing argument, and (3) referring to checks as being forged.

"Prosecutorial misconduct may deprive a defendant of his constitutional right to a fair trial." *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012). An appellant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-61, 278 P.3d 653 (2012). Where the defendant objected at trial, the appellant must show that the improper comments had a substantial likelihood of affecting the verdict. *Emery*, 174 Wn.2d at 760. If the defendant did not object at trial, he must show that the prosecutor's misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. "'Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard.'" *State v. Thorgerson*, 172 Wn.2d 438, 460, 258 P.3d 43 (2011) (quoting *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995)).

A.    HANDWRITING SAMPLES

McNicholas contends that the State sent less than a third of its more than 270 known handwriting samples to its handwriting expert.  He alleges this prejudiced him because the expert could not come to a definitive conclusion given that he did not have enough comparable samples.

The record indicated that Spaulding found "hundreds of documents" in McNicholas's truck.  6 RP at 1196.  However, Spaulding did not state whether all or some of those documents had examples of McNicholas's signature or handwriting, or how many documents there were.  The specific number of documents the State had available to submit to its handwriting expert is not specified anywhere in the record.  Because the record does not show that the State had 270 writing samples, McNicholas's argument is more appropriate for a personal restraint petition.  *McFarland*, 127 Wn.2d at 335.

McNicholas also alleges that the State failed to submit one check for handwriting analysis, despite charging him with forgery for that particular check number.  McNicholas has not identified the check number he is referring to, however Szymanski's report and testimony both make clear that Szymanski reviewed each check charged as a forgery count and concluded that it was "highly probable" that Hitt had not written them.  5 RP at 897.  Thus, we reject this claim.

B.    BURDEN SHIFTING

McNicholas alleges that the prosecutor committed misconduct by shifting the burden to him in closing arguments by questioning his failure to call Reed as a witness.

During closing, the prosecutor argued that McNicholas had said "[n]o, I haven't done any work for her.  Didn't do any work, didn't order any materials.  Brandon, mythical Brandon, he's the one, he probably did some work for her, he probably did some work on the roof."  11 RP at 2089-90.  McNicholas objected, alleging that this argument improperly placed the burden on him

to produce witnesses. The court heard arguments from both sides outside the presence of the jury. The court allowed argument about the fact that there wasn't testimony from Reed, but ruled that arguments implying that Brandon was "mythical" or not a real person were improper. 11 RP at 2093-94.

The court gave the jury a corrective instruction to not consider the attorneys' arguments as evidence. It also instructed: "I've concluded that any reference to [Brandon] with the term of mythical or otherwise would be inappropriate. To the extent that that's been utilized in closing, you should disregard that and not have considered that in any way." 11 RP at 2107-08.

The prosecutor then argued:

> Now, I want to make this very clear, ladies and gentlemen, as the State I have the burden of proving every element of every crime to you beyond a reasonable doubt, the defense has no burden whatsoever. But I want to submit to you, if the Defendant testifies that if there's a person out there and there are documents out there that completely exonerate him, that prove his innocence, you get to ask, "Why are we not hearing from that person and why are we not seeing those documents?"

11 RP at 2109. McNicholas did not object to this argument.

As to the first comment, the trial court sustained McNicholas's objection and gave a limiting instruction to the jury. The jury "is presumed to follow the instruction that counsel's arguments are not evidence." *State v. Warren*, 165 Wn.2d 17, 29, 195 P.3d 940 (2008). As to the second comment the prosecutor made, "[t]he State is entitled to comment upon the quality and quantity of evidence the defense presents." *State v. Andersen*, 153 Wn. App. 417, 428, 220 P.3d 1273 (2009). Given the prosecutor's warning that the defense has no burden whatsoever, her comments on the defense evidence were not improper.

C.     REFERENCE TO "FORGED CHECKS"

McNicholas refers to the State referring to checks as being forged in the section of his SAG listing instances of prosecutorial misconduct. However, the page he cites includes the trial court

reading a stipulation to the jury, that included that "suspected forged checks from Audine Hitt" were submitted to the handwriting expert. 5 RP at 865. He has not indicated how the trial court's reference to "suspected forged checks" constitutes error nor how statements of the trial court are related to prosecutorial misconduct. We reject this claim.

V.     SPAULDING TESTIMONY

McNicholas contends that Spaulding "[e]fficaciously presented to lead the jury to believe or let it be known that [he] had similar charges pending in another county." SAG at 5. He also contends that Spaulding failed to confirm he had obtained a search warrant; only that he applied for one.

McNicholas cites to a portion of Spaulding's testimony referring to the fact that Spaulding searched McNicholas's truck while the truck was in Cowlitz County. McNicholas does not indicate how this testimony "lead the jury to believe or let it be known" that he had similar charges in Cowlitz County. SAG at 5. Throughout Spaulding's testimony, he never alluded to any charges against McNicholas in any other case.

As to the search warrant for McNicholas's truck, Spaulding testified that he applied for and obtained a warrant to search the vehicle and then executed the search.

McNicholas also contends that Spaulding gave "highly prejudicial" testimony about evidence in his truck relating to charges in another county, referring to the file for Betsy Miller. SAG at 5. Spaulding did not testify as to the contents of the Miller file in McNicholas's truck, nor did he suggest that any criminal charges related to it. Rather, he stated that he found it among numerous other documents in the vehicle.

McNicholas also questions whether it is "considered direct evidence when a police officer testifies about a letter found in defendants truck; (Helen McGinnis), that was considered 404(b)

evidence." SAG at 18. This does not appear to be an argument or assignment of error. To the extent he argues Spaulding's testimony about finding the McGinnis letter should have been inadmissible, McNicholas does not suggest any reason the court erred by admitting it. We deny relief on this issue.

VI.     FILES FROM TRUCK

McNicholas argues that the court erred by admitting into evidence the client files found in his truck. He contends they were not sufficiently authenticated and did not constitute habit evidence. Insofar as McNicholas argues the files were not proper habit evidence, we do not consider his arguments because the trial court ruled that they were not offered to show habit.

"Authentication is a threshold requirement designed to assure that evidence is what it purports to be." *State v. Payne*, 117 Wn. App. 99, 106, 69 P.3d 889 (2003). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). The proponent of a piece of evidence "must make only a prima facie showing of authenticity for purposes of establishing admissibility" and can meet this burden by showing "'enough proof for a reasonable fact finder to find in favor of authenticity.'" *In re Det. of H.N.*, 188 Wn. App. 744, 751, 355 P.3d 294 (2015) (quoting *Payne*, 117 Wn. App. at 108). A trial court's admission of evidence is reviewed for abuse of discretion. *H.N*, 188 Wn. App. at 753.

In this case, the trial court noted that the State intended to authenticate the client files by showing they were found in a vehicle that McNicholas stipulated belonged to him, they contained information belonging to him, and they used a business name that belonged to him. When asked about the authentication issue, McNicholas acknowledged he thought the State could meet the foundational requirements. When the State moved to admit the evidence, McNicholas objected to

29

relevance and hearsay, but did not object to authenticity. Because a "party may assign evidentiary error on appeal only on a specific ground made at trial," McNicholas has waived any argument as to the client files' authenticity. *Kirkman*, 159 Wn.2d at 926.

## VII. CUMULATIVE ERROR

McNicholas lists a number of events he claims caused cumulative error.

### A. ADMISSIBILITY OF CHARGING DOCUMENT

McNicholas assigns error to the charging document being kept out of evidence. He does not indicate anywhere in the record that he requested the charging document be admitted into evidence, nor does he suggest how its absence prejudiced his case in any way. We reject this argument.

### B. HITT AFFIDAVIT

McNicholas assigns error to Hitt's affidavit, stating she wrote some checks to McNicholas but did not write fifteen others. This affidavit was never admitted into evidence and McNicholas does not argue how its existence created any kind of error or prejudiced his case. We reject McNicholas's claim.

## VIII. DISCOVERY DEADLINE VIOLATIONS

McNicholas contends that the State violated discovery deadlines with photographs that it first showed the defense on the morning of trial. We reject this claim because he has not argued how these photographs prejudiced his case.

McNicholas makes several other comments in this section about "[a]lternate definition forgery" and "redacted/removed affidavit." SAG at 6. We do not interpret these comments as claims for any specific relief or allegations of prejudice.

IX.    PROCEDURAL ERROR

McNicholas cites several examples of what he calls "[p]rocedural [e]rror" in his case.  SAG at 6-7

A.    TRACKING CASES

McNicholas contends that allowing three pending cases to "trac/providing motive for 404(b) evidence testimony raised the prejudicial level up considerably."  SAG at 6.  Insofar as this is a claim that it was error for the court to track his other pending cases, he has not shown how this prejudiced him, as the judge denied the State's motion to join the cases and the jury never received any information about the other pending cases.  We reject this claim.

B.    FINDINGS AND CONCLUSIONS

McNicholas contends that he was prejudiced by the trial court's "failing several times to provide" its facts and conclusions from the joinder motion hearing to the defense.  SAG at 6.  In support of his argument, he cites to where the court told the defense that the findings "wouldn't be entered today because I haven't finished them completely yet."  1 RP at 186.  McNicholas's trial counsel told the court that she intended to use these findings and conclusions in her arguments on the 404(b) evidence, since she "wanted to be able to use the Court's rationale and my own arguments combined for why the witnesses for this separate case that was no[t] joined is also not appropriate to have them testify at this trial."  1 RP at 187-88.  The court ultimately did not enter its findings of fact and conclusions of law until after trial.

McNicholas does not show how the delayed entry of findings of fact and conclusions of law prejudiced his case, so we reject his claim.

C.  RELIANCE ON LABOR & INDUSTRIES EVIDENCE

McNicholas contends that the trial court erred in denying his 404(b) motion on the basis of reliance on inaccurate information about his companies from the Department of Labor and Industries.

In denying the 404(b) motion, the court noted that:

> The misconduct that we're talking about involves allegedly with Ms. McGinnis, Ms. Lane, Ms. Yaddof, and then in relation to Labor & Industry and it goes to Green Tech's issues with being licensed, bonded and insured, and then extending that to Pacific Coast Vinyl and Remodeling to the extent the license there had been suspended due to the summons and complaint, the bond having been cancelled with a judgment being outstanding, and potential testimony, then, that that would prevent relicensing to take place with that outstanding judgment that's involved.

2 RP at 296-97.  There is nothing in the record indicating that the trial court erred factually in its decision with regard to the status of McNicholas's companies.  We reject McNicholas's claim.

D.  SZYMANSKI TESTIMONY

McNicholas contends that the trial court erred by allowing Szymanski to testify.  He does not offer any substantive argument or reasoning for this point.  He did not object in the trial court. We do not consider this argument.

E.  PROTECTION ORDER

McNicholas contends that the trial court erred by admitting the protection order protecting Hitt from him.  A trial court's admission of evidence is reviewed for abuse of discretion.  *H.N*, 188 Wn. App. at 753.

At trial, the State produced evidence that the order existed but did not admit the order itself. The court ruled that the prejudicial effect of the protection order itself would outweigh its probative value.

McNicholas has not shown that the trial court abused its discretion so we reject his claim.

X. FOURTH AMENDMENT VIOLATION

McNicholas contends that his truck was seized without a warrant and that on January 5, 2017, he was granted "a[n] order of dismissal to have the truck and all seized property inside to be returned." SAG at 8.

Spaulding testified at trial that he applied for and obtained a search warrant for McNicholas's vehicle before executing the search. McNicholas does not cite to anything in the record indicating that Spaulding did not have a warrant. To the extent McNicholas's allegations rely on information outside the record, we do not consider them.

A. SEARCH INVENTORY

McNicholas contends that Spaulding was required to prepare an inventory of all items seized upon completion of his search of the truck and to give McNicholas a copy of the warrant and a receipt of the property taken.

CrR 2.3(d) requires an officer taking property under a search warrant to "give to the person from whom or from whose premises the property is taken a copy of the warrant and a receipt for the property taken." The same rule also requires "a written inventory of any property taken" to be "made in the presence of the person from whose possession or premises the property is taken." CrR 2.3(d).

There is no information in the record about whether or not Spaulding prepared an inventory or a receipt or whether he supplied these documents to McNicholas. To the extent McNicholas's allegations rely on information outside the record, we do not consider them.

XI. FIFTH AMENDMENT VIOLATION

McNicholas contends that he "felt compelled to produce the sales contract between himself and Mrs. Audine Hitt." SAG at 8. He cites *Andresen v. Maryland*, which held that "the search of

an individual's office for business records, their seizure, and subsequent introduction into evidence do not offend the Fifth Amendment[]." 427 U.S. 463, 477, 96 S. Ct. 2737, 49 L. Ed. 2d 627 (1976).

The Fifth Amendment to the United States Constitution states: "nor shall any person . . . be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The fact that McNicholas "felt compelled" to produce the sales contract does not make it compelled testimony under the Fifth Amendment.

## XII.    ER 404(b) EVIDENCE

McNicholas devotes a section of his SAG to a discussion of case law and rules concerning ER 404(b) evidence. However, he does not suggest or argue how any of these cases or rules apply to his case. He does not inform this court of the nature and occurrence of any alleged error. RAP 10.10(c). We are not obligated to search the record in support of claims made in McNicholas's SAG. RAP 10.10(c); *Thompson*, 169 Wn. App. at 493. To the extent he challenges the admissibility of ER 404(b) evidence in his case, his brief addresses this issue and matters that "have been thoroughly addressed by counsel" are "not proper matters for [the] statement of additional grounds under RAP 10.10(a)." *Thompson*, 169 Wn. App. at 493.

McNicholas contends that the jury instruction on 404(b) evidence was insufficient to eliminate propensity. However, "[j]urors are presumed to follow the court's instructions." *State v. Kalebaugh*, 183 Wn.2d 578, 586, 355 P.3d 253 (2015). McNicholas has not suggested any facts to rebut this presumption.

## XIII.    SAME CRIMINAL EPISODE

McNicholas devotes a section of his SAG labeled "Same Criminal Episode" to a discussion of various cases about mandatory joinder. He does not identify or argue any error throughout this

section of his SAG. Therefore, we do not address the content of this section. *Thompson*, 169 Wn. App. at 493.

To the extent that McNicholas's SAG can be construed to argue that his case should have been joined with other pending cases, there is no evidence in the record to suggest the details of any of his other cases except their existence. Further, the State moved to join McNicholas's cases and he opposed the motion and won.

XIV. DOUBLE JEOPARDY AND MERGER

A. DOUBLE JEOPARDY

McNicholas contends that his convictions of identity theft and forgery, and his convictions of theft in the first degree and forgery violate his double jeopardy rights.

A "defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law." *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995). If each offense, as charged "includes elements not included in the other, the offenses are different and multiple convictions can stand." *Calle*, 125 Wn.2d at 777.

A conviction for forgery, as charged in this case, requires either that the defendant "falsely makes, completes, or alters a written instrument" or "possesses, utters, offers, disposes of, or puts off as true a written instrument which he or she knows to be forged." RCW 9A.60.020(1). Theft requires that he "wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof" or do so "[b]y color or aid of deception" with "intent to deprive him or her of such property or services." RCW 9A.56.020(1). Identity theft requires that the defendant "knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime." RCW

35

9.35.020(1). Because each crime requires at least one element the others do not, McNicholas's double jeopardy rights were not violated.

### B. MERGER

McNicholas cites numerous cases discussing the concept of merger, but he does not provide any substantive argument that this doctrine applies to his case. Nor does he provide any guidance to what convictions he believes this doctrine applies. We do not consider this claim.

### XV. TITLE FIVE EVIDENCE

McNicholas labels a section of his SAG "Title Five Evidence / Corporations" and discusses a corporation's personhood and various rules and cases discussing corporations and contract law. SAG at 15. He does not indicate or argue how any of these issues are relevant to his case or prejudiced him in any way. We do not consider this section.

### XVI. JURY INSTRUCTIONS

McNicholas raises a number of arguments about the jury instructions. We review alleged errors of law in the jury instructions de novo. *State v. Stacy*, 181 Wn. App. 553, 568, 326 P.3d 136 (2014). If an instruction correctly states the law and the trial court refuses to give a jury instruction, we review for abuse of discretion. *Stacy*, 181 Wn. App. at 569.

### A. CONTRACT DEFINITION ARGUMENT

McNicholas assigns error to the trial court's ruling that he could not use the Webster's Dictionary definition of "contract."

Because McNicholas's defense was based on having a contract with Hitt, he requested a jury instruction with the dictionary definition of "contract." The court rejected this request, stating "I think with the notion of a contract, if it was a more challenging concept for the jury to grasp or what a contract is or isn't, I don't think that there's a need to do a separate instruction on a portion

36

of the Webster's Dictionary as far as the contract itself is concerned." 9 RP at 1778-79. It was not an abuse of discretion for the trial court to deny McNicholas's request to instruct the jury about the dictionary definition of "contract."

B.     DATES

McNicholas contends that the trial court erred by instructing the jury that the crime must be proved between the dates of April 1, 2014 and September 30, 2014. He argues that this inferred that the theft and identity theft counts occurred "way before and long after the 9 counts of forgery. (50 days difference)." SAG at 18.

McNicholas did not object to this instruction at trial and, therefore, waives this claim of error on appeal. *State v. Smith*, 174 Wn. App. 359, 364, 298 P.3d 785 (2013); RAP 2.5(a).

C.     OTHER ISSUES

McNicholas lists numerous other issues he takes with the jury instructions.[8] He does not identify any issues with these instructions, nor provide any indication how these instructions prejudiced him. He did not object to any of the specific instructions he notes, so he has waived any error in these instructions. *Smith*, 174 Wn. App. at 364; RAP 2.5(a).

---

[8] These issues include: "[i]dentification or financial information"; "[t]he victims vulnerability also must be a substantial factor"; "[a]lternate instruction to 34(1) over long period of time"; "[a]nd any other factors that affect your evaluation or belief of a witness"; "[t]he term common scheme or plan infers the defendant committed more than one count of theft"; "[i]dentity theft-1 major economic offense infers more than $1500 and infers multiple counts – 9 counts forgery yet only one count ID-theft why?"; "'[l]engthy' vague"; and "[i]nstruction #37 & 38 number of counts being told to the jury back to back implies 21 counts total, prejudicial." SAG at 18-19. To the extent these comments can be construed as challenges to specific jury instructions, McNicholas did not object to any of the instructions at trial.

XVII.  SENTENCE

A.  DOSA

McNicholas contends that the trial court abused its discretion by refusing to consider him for a DOSA.

The DOSA program authorizes trial judges to give eligible nonviolent drug offenders a reduced sentence, treatment, and increased supervision in an attempt to help them recover from their addictions.  *State v. Grayson*, 154 Wn.2d 333, 337, 111 P.3d 1183 (2005).  "As a general rule, the trial judge's decision whether to grant a DOSA is not reviewable."  *Grayson*, 154 Wn.2d at 338.  However, "an offender may always challenge the procedure by which a sentence was imposed."  *Grayson*, 154 Wn.2d at 338.  *Grayson* reversed the trial court's refusal to consider the defendant for a DOSA sentence because "[a] trial court abuses discretion when 'it refuses categorically to impose an exceptional sentence below the standard range under any circumstances.'"  154 Wn.2d at 342 (quoting *State v. Garcia-Martinez*, 88 Wn. App. 322, 330, 944 P.2d 1104 (1997)).

In this case, the trial court did not refuse to impose a DOSA without consideration.  The trial court considered the record and the parties' arguments, as well as letters submitted by McNicholas during sentencing about his drug problems.  It reasoned that, looking at this case in isolation, the only evidence favoring a DOSA evaluation was the letters of support from family and there was no other evidence of drugs being involved in the case at all.  Looking at McNicholas's other pending cases in both Clark and Cowlitz counties, the judge ruled that a DOSA would be impracticable given the complications of trying to sort out how all the charges would interact.  The trial court considered many factors submitted by both parties and declined to give McNicholas a DOSA evaluation.  It did not abuse its discretion.

B.     SPEEDY SENTENCE

McNicholas contends that his trial counsel "failed to ask for speedy sentence waiver" so he could resolve his pending Cowlitz County cases. SAG at 19. McNicholas was sentenced on August 17, 2016 after the trial concluded on July 18, 2016.

RCW 9.94A.500(1) requires a sentencing hearing within forty court days of conviction. "[I]f a sentencing delay is 'purposeful or oppressive,' it violates speedy sentencing rights." *State v. Modest*, 106 Wn. App. 660, 663, 24 P.3d 1116 (2001) (quoting *Pollard v. United States*, 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957)).

McNicholas has not shown that his speedy sentencing rights were implicated nor that a waiver would have been required for a sentencing hearing scheduled a month after his conviction, within the forty court days required by RCW 9.94A.500(1).

C.     EXCEPTIONAL SENTENCE

McNicholas contends that the court violated *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), by failing to submit to a jury facts upon which it sought increased punishment. However, the court did submit to a jury a questionnaire on each count as to whether it found aggravating factors for a particularly vulnerable victim and whether the crime was a major economic offense or series of offenses. The jury found that both aggravators applied to each count. The trial court did not violate *Blakely*.

McNicholas makes several other comments about his exceptional sentence, such as "[a] jury finding of an aggravating circumstance does not in itself, increase the standard range," and "'substantial & compelling reasons' is not defined in the SRA." SAG at 20. These comments do not appear to indicate any error or prejudice to McNicholas and we do not consider them.

D.      SAME CRIMINAL CONDUCT

McNicholas contends that his crimes constituted the same criminal conduct for sentencing. He is not clear which counts he contends are the same criminal conduct. Because he argues that forgery counts may constitute same criminal conduct when committed on different days, we address his claim as an argument that his forgery convictions constituted the same criminal conduct.

For sentencing purposes, "[m]ultiple offenses encompass the same criminal conduct if the crimes involve the same (1) objective criminal intent, (2) time and place, and (3) victim." *State v. Walker*, 143 Wn. App. 880, 890, 181 P.3d 31 (2008). If any of the three elements is missing, "a trial court must count multiple offenses separately when calculating a defendant's offender score." *Walker*, 143 Wn. App. at 890. We review determinations of same criminal conduct "for abuse of discretion or misapplication of law." *State v. Graciano*, 176 Wn.2d 531, 535, 295 P.3d 219 (2013). Under this standard, "when the record supports only one conclusion on whether crimes constitute the 'same criminal conduct,' a sentencing court abuses its discretion in arriving at a contrary result." *Graciano*, 176 Wn.2d at 537-38. Where the record "adequately supports either conclusion, the matter lies in the court's discretion." *Graciano*, 176 Wn.2d at 538. The burden is on the defendant to "establish the crimes constitute the same criminal conduct." *Graciano*, 176 Wn.2d at 539.

All of McNicholas's forgeries involved the same victims: Audine Hitt and her financial institution. Each forgery count in this case was charged for a different date. Therefore, the forgery counts did not occur at the same time, failing the second requirement for same criminal conduct. Each of McNicholas's forgery counts constituted independent criminal conduct to be punished separately.

McNicholas cites *State v. Johnson*, 180 Wn. App. 92, 320 P.3d 197 (2014), for the proposition that forgery counts may constitute the same criminal conduct even when they occur on different days. *Johnson* dealt with the issue of whether a trial court is bound by a prior sentencing court's conclusions with regard to whether multiple crimes constitute the same criminal conduct from a prior case. 180 Wn. App. at 104-05. Nothing from that case erodes the requirement that the two crimes involve the same time and place. RCW 9.94A.589(1)(a).

## XVIII. ADDITIONAL ISSUES

### A. TIME FOR TRIAL RULE

McNicholas contends that the trial court violated the "time for trial rule" by setting a "'no exceptions'" trial date in June 2016 and then allowing another month continuance to accommodate a witness. SAG at 17.

This case was set to go to trial in April 2016 until McNicholas sought new defense counsel the week before trial. He then moved for a continuance and the court confirmed with him that he wanted a trial date set past the expiration of his current speedy trial date. The court then set the trial date as June 13, 2016. On the record, McNicholas specifically stated that by giving up his speedy trial right, the trial could be held any day within 60 days of June 1, 2016. The trial date was then delayed until July 11, 2016, which was within 60 days of June 1, 2016. McNicholas expressly waived any violation of his time for trial rights.

### B. REDACTIONS

McNicholas "objects to the redactions w/o authority made by the State" to exhibits 23 and 24. SAG at 17.

Exhibits 23 and 24 were McNicholas's bank records. The parties stipulated to the admissibility of these exhibit; however, the State redacted the portions it submitted into evidence

without giving prior notice of the redactions to the defense. The State had no issue with adding the redacted portions back into the exhibits as the jury would receive them and stated it had removed the bank statements that were outside the charging period, believing they may be prejudicial to McNicholas. The parties agreed to reproduce new versions of the exhibits per the stipulation with the full versions of the bank records, redacted to remove any indications of McNicholas's inmate status.

After the issue was resolved, McNicholas objected that it was "an improper action on the part of the Prosecutor" to have modified the exhibits without authority. 10 RP at 1994. When asked if the defense sought any particular remedy, defense counsel stated that it would be sanctionable in a civil case but she was not asking for sanctions. She stated: "I'm not asking for sanctions, but I'm asking for it to be part of the official record, that should not have happened" because "it's just improper." 10 RP at 1996.

Given the resolution of this issue by the trial court, McNicholas is unable to show any prejudice to his case or reason for any action by this court.

C.   CHAIN OF CUSTODY

McNicholas challenges chain of custody and authenticity of exhibits that he stipulated to, claiming that he "really had no idea what he was stipulating to or why." SAG at 18. However, on the record at trial, the court confirmed with McNicholas that he had discussed the stipulation with his attorney, he understood what was contained in it, and he did not need additional time to talk to his attorney. The court then explained the terms of the stipulation and repeatedly asked McNicholas whether he understood. McNicholas repeated that he understood and that the stipulation was what he wanted. McNicholas's argument has no basis in the record.

D.     QUESTIONS

McNicholas lists the following "questions" in his SAG:

Question: If the theft-one count is indicative to the forgery counts how could 404(b) evidence be allowed to prove theft only.  Should the tape recordings been authenticated to help bolster the weight given to the testimony?  Prosecutorial misconduct. (Delay)
Question: Does the charge "working as a[n] unlicensed contractor impermissibly broadened the original charges?  Or would the relation back doctrin[e] apply?
Question: Counsels failure to challenge improper aggregation of charges
Question: Going over the questioning & examining voir [dire] of jurors?

SAG at 18.  These questions do not provide any argument or inform this court of the nature or occurrence of any particular error.  We do not consider these questions.

E.     FIRST TIME OFFENDER WAIVER

McNicholas labels a section of his SAG "first time offender waiver 9.94A.650," however, he does not include any argument or reference to his case throughout the section.  SAG at 20.  We do not consider this section of the SAG.

We affirm McNicholas's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for the public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, C.J.

_____
Lee, J.

43